**STATE of Tennessee, Plaintiff-Appellee,**

v.

**Richard Hale AUSTIN,
Defendant-Appellant.**

Supreme Court of Tennessee.

May 26, 1981.

Rehearing Denied July 27, 1981.

William M. Leech, Jr., Atty. Gen., Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, for plaintiff-appellee.

Frank J. Glankler, Jr., J. N. Raines, C. Barry Ward, Memphis, for defendant-appellant.

## OPINION

HARBISON, Chief Justice.

Appellant appeals from his conviction as accessory before the fact to murder in the first degree. Following the bifurcated trial procedures set out in the controlling Tennessee statutes, the jury imposed the death penalty. The trial judge concurred, finding the sentence appropriate under the facts.

Appellant was convicted of employing an escaped convict to kill one Julian Watkins, an undercover agent for the Memphis police vice squad, as the result of whose activities indictments had been returned against appellant and a number of his employees and associates in an illegal gambling operation. Watkins was to be the principal witness for the prosecution against appellant and his codefendants.

Counsel for appellant have argued only briefly an issue of the insufficiency of the evidence. The record reveals that there was abundant material evidence to support the finding of the jury, concurred in by the trial judge, that appellant did in fact employ and pay a substantial sum of money to Charles Blankenship, an escaped convict, to gun down and execute in gangland fashion Julian Watkins at the latter's place of business. The scheme was carried out as planned and the assassin was paid as agreed.

The principal issues raised by appellate counsel (who were not trial counsel for appellant) involve the constitutionality of the Tennessee statutes authorizing the imposition of the death penalty for murder in the first degree and accessory before the fact of that crime. Although we will discuss these issues briefly, they have been considered and decided adversely to the contentions of appellant in other cases recently decided by this Court.[1]

Although there was conflicting evidence at the trial as to some issues, it was undisputed that Jack Charles Blankenship, accompanied by Terry Lee Casteel, went to the automobile body repair shop operated by Julian Watkins on the morning of May 23, 1977. Blankenship requested Watkins to come outside and give an estimate for some allegedly needed repairs. He then shot Watkins four times, fatally wounding

---

1. Although the instant case was submitted to the Court earlier than some of the other reported decisions herein referred to, in the course of regular assignment and release of opinions the decisions in those cases were released earlier. In one of the first decisions in which this Court approved the imposition of the death penalty under present statutes, *Houston v. State*, 593 S.W.2d 267 (Tenn.1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980), review was sought in the United States Supreme Court. That review was not completed until December 1980. This Court deemed it prudent not to release further opinions approving the imposition of the death penalty pending that review. Subsequently Justice Brock, to whom the record in the present case was initially assigned, concluded that imposition of the death penalty under any circumstances violated provisions of the Tennessee Constitution. *See* his dissenting opinion in the case of *State v. Dicks,* Tenn., 615 S.W.2d 126 (1981). Thereafter the undersigned was designated to prepare the opinion of the Court in the present case.

him, re-entered his automobile and left at a high rate of speed.

Casteel testified that he had been employed by appellant, Richard Austin, to operate an establishment known as the "Golden Cue". Members of the Memphis vice squad suspected that illegal gambling operations were being conducted at the Golden Cue. They employed the decedent, Julian Watkins, a reserve deputy sheriff, to engage in an undercover operation at this establishment from January 1977 until April. During that time Watkins went to the Golden Cue on a number of occasions, observed appellant and a number of his employees, including Casteel, and reported that illegal gambling was in fact being conducted. Ten indictments were obtained on the basis of the testimony of Watkins, and arrest warrants were served on appellant and several of his employees on April 20. Watkins accompanied the arresting officers and identified the persons named in the warrants. Not all of these persons were present on that occasion, however, and on Wednesday, May 18, 1977, Watkins returned with officer Thomas Beach to assist him in serving other individuals who had been indicted. Appellant engaged in a conversation with Watkins at that time and ascertained that the latter would be at his body repair shop on the following Monday, May 23.

Casteel testified that he and appellant met with Charles Blankenship, who had escaped from a correctional institution in Shelby County, and that appellant had a conversation with Blankenship. Later appellant directed Casteel to take Blankenship to Watkins' home. He did so on the evening of Sunday, May 22, but Watkins was not at his residence. Casteel then took Blankenship to a trailer owned by appellant and his wife just over the state line in Mississippi. On the morning of May 23 he and appellant went to the trailer, and Casteel then accompanied Blankenship to Watkins' place of business, where the murder occurred. Casteel was indicted in the present case. However, his trial was severed and he testified as a key witness for the State.

Blankenship was seen by a number of witnesses during the day on May 23, following the homicide, and he displayed large sums of money to several of them. He was arrested early on the morning of May 24, 1977. Subsequently he plead guilty to murder in the first degree and received a sentence of life imprisonment. He was not called as a witness by either side in the trial of the present case.

Appellant denied any knowledge of the employment of Blankenship to murder Watkins and attempted to establish that his estranged wife had employed Casteel to concoct the scheme. Casteel denied this, and Mrs. Austin was not called as a witness at the trial. A number of other witnesses, employees of appellant, testified that business at appellant's establishment declined drastically after indictments were returned and arrests made in April, and that appellant on several occasions stated that he would like to see Julian Watkins killed. There was also testimony that appellant subsequently attempted to intimidate witnesses for the State and prevent their testifying in this case.

■ After finding appellant guilty in the initial phase of the trial, the jury heard some additional evidence offered by the State at the sentencing phase. Appellant offered no testimony during that portion of the trial. In imposing the death penalty the jury found that the evidence established as an aggravating circumstance that the appellant had either committed the murder for remuneration or promise of remuneration, or had employed another to commit the murder for remuneration or promise thereof, T.C.A. § 39–2404(i)(4). The jury found no mitigating circumstances to outweigh this, and our examination of the record establishes that the finding of the jury was fully supported by abundant material evidence.

The trial was a lengthy and hard-fought one, and classic issues for determination by the jury were presented. Although they returned a verdict using the statutory language respecting the aggravating circumstances above referred to, there can be no question but that they found that appellant had deliberately and willfully employed another person and paid him to murder Julian Watkins, thereby eliminating the only witness who could have testified in support of the pending indictments against appellant and his employees for conducting an illegal gambling operation. The issue regarding insufficiency of the evidence is without merit and is overruled.

▮ As previously stated, all of the other issues raised by appellant have been considered in depth by the Court in other cases and found to be without merit. It is first argued on behalf of appellant that the death penalty is violative of the provisions of the United States Constitution and those of the state constitution regarding cruel and unusual punishment. This Court has expressly held to the contrary on numerous occasions and the issue does not warrant further discussion here. *See Houston v. State*, 593 S.W.2d 267, 276 (Tenn.1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980); *Cozzolino v. State*, 584 S.W.2d 765, 767 (Tenn.1979). The decision as to whether this state will or will not have a death penalty for murder in the first degree is one to be made by the legislative branch of government, not the judiciary. In the opinion of the majority, there is nothing in either the state or the federal constitution, historically or otherwise, which precludes the imposition of the death penalty in accordance with the procedures and under the circumstances provided for in the present statutes of this state.

▮ In the second issue presented, appellant insists that the Tennessee statutes are unconstitutional because they do not require that the accused be placed on notice, in advance, of the state's intended proof of aggravating circumstances. This issue was considered and decided adversely to the insistence of appellant in *State v. Berry*, 592 S.W.2d 553, 562 (Tenn.1980).

▮ In their third issue counsel insist that the Tennessee statutes are constitutionally defective by requiring a mandatory sentence. This and related issues were considered in detail in *State v. Dicks*, Tenn., 615 S.W.2d 126 (1981), and found to be without merit.

In their fourth issue counsel insist that the imposition of death in this case is disproportionate inasmuch as Blankenship received only a life sentence while appellant received that of death. We are unable to sustain this contention. The jury in the present case were fully apprised of the fact that Blankenship had plead guilty and had received a life sentence upon a plea bargain. The proof which was presented to the sentencing court or jury in the Blankenship case, however, was not before the present jury, nor was Blankenship called as a witness. The jurors in the present case had before them convincing evidence that appellant in cold blood, in order to eliminate a witness against him, hired an assassin and paid him a substantial sum to take the life of Julian Watkins. The fact that appellant himself did not pull the trigger or personally commit the homicide does not render the sentence of death against him disproportionate.

A similar contention was considered by the Court in the cases of *State v. Groseclose and Rickman*, 615 S.W.2d 142 (1981). There a husband hired two individuals to kill his wife and to make the homicide appear to have been incident to rape and robbery. He and one of the assassins received the death penalty; a younger less experienced defendant who freely admitted his guilt and cooperated with law enforcement officials was given a life sentence. The death penalty was not found to be disproportionate or arbitrary in that case, nor do we find it to be so in the present case.

It is further urged on behalf of appellant that the death penalty statutes in Tennessee are impermissibly vague. This contention and a similar argument were dealt with in detail by the Court in *State v. Dicks, supra.* There the burden of proof and the statutory procedures involved in the imposition of the death penalty were delineated and sustained. We find it unnecessary to repeat that discussion here. Likewise we find without merit the sixth issue raised by appellant to the effect that the Tennessee statutes permit the introduction of inadmissible evidence in the sentencing phase. No such evidence was offered or suggested in the present case, and the statute is certainly not unconstitutional on its face in this regard. Equally without merit is the insistence that the bifurcated trial procedures are violative of the double jeopardy provisions of the state and federal constitutions. The sentencing phase of the trial is concerned only with the punishment and does not in any sense constitute a second trial for the same offense or create a separate and additional offense.

All of the assignments of error have been carefully considered as has the evidentiary record. We find no reversible error in the trial proceedings and accordingly affirm the judgment, both as to the conviction and the punishment. Costs are assessed to appellant. The sentence will be executed as provided by law on Thursday, October 1, 1981, unless stayed or otherwise directed by further orders of this Court or other proper authority.

I am authorized to state that Justice BROCK concurs in the affirmance of conviction but dissents from the imposition of the death penalty for the reasons expressed in his dissent in *State of Tennessee v. Dicks.*

FONES and COOPER, JJ., concur.

BROCK, J., dissents.

### ORDER

A petition for rehearing has been filed on behalf of appellant. After consideration of same, the Court is of the opinion that the petition is not well taken, and the same is accordingly denied. The Court does not find the death penalty in this case disproportionate, in view of the deliberate and premeditated actions of appellant in paying another to take the life of the only witness against appellant in pending criminal proceedings. As pointed out in the original opinion, similar conduct was held to merit the death penalty in the case of *State v. Groseclose*, 615 S.W.2d 142 (Tenn.1981).

The petition is denied at the cost of appellant. Justice Brock adheres to the views stated in the original opinion with respect to the death penalty.

FONES and COOPER, JJ., concur.

BROCK, J., dissents.