STATE of Tennessee, Appellee,

v.

Richard CALDWELL, Jr., Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

May 26, 1983.

Howard F. Douglass, Lexington, for appellant.

William M. Leech, Jr., Atty. Gen. & Reporter, Ann Lacy Johns, Asst. Atty. Gen., Nashville, Jerry Woodall, Dist. Atty. Gen., Jackson, William Brooks, Asst. Dist. Atty. Gen., Lexington, for appellee.

## OPINION

DWYER, Judge.

Appellant appeals as of right his conviction for committing the offense of murder in the first degree with a sentence of life imprisonment.

Among the eleven issues raised by appellant is an attack on the sufficiency of the evidence in this case. With that in mind, we will narrate the facts adduced at trial.

In the afternoon hours of Thursday, March 26, 1981, the appellant shot and killed the decedent, Carl Lipford. The homicide took place on the James Gardner farm in Henderson County where appellant resided. Appellant suspected the decedent of being responsible for the surreptitious removal of a track from appellant's bulldozer. A witness called by the State testified that he was present when appellant and the decedent were looking over the bulldozer. The witness stated that he heard a shot and turned around in time to see appellant firing two more shots into Lipford with a .25 caliber automatic pistol. Appellant then stated, "You son of a bitch, you stole that track." Lipford responded, "Yes, I did; don't shoot me no more." Appellant then shot Lipford two more times. The victim stumbled backwards and then ran behind a chicken house pursued by the appellant.

The witness heard one more shot. The appellant then came back around the chicken shed, reloaded his pistol, and threatened to kill the witness unless he followed his orders. The appellant's son drove decedent's car from the farm, and appellant and the witness followed in appellant's truck. The decedent's car was taken to a back road in McNairy County, doused with gasoline and burned.

The following Saturday, decedent's unclothed body was found in a creekbed in Decatur County. The cause of death was multiple gunshot wounds and a stab to the side of the neck which had severed the carotid artery and jugular vein. Decedent's left ring finger had been severed from his body. The ensuing investigation revealed that decedent was carrying $3,100.00 in one hundred dollar bills on his person on or about the time of the slaying. Appellant's brother-in-law testified that, shortly after the slaying, appellant gave him some money and three bloodstained rings to keep for him. When appellant was arrested on March 28, 1981, some $1,044.00, mostly in one hundred dollar bills, was found on his person. A statement given by appellant to the sheriff, in which he admitted shooting and stabbing the decedent, was introduced at trial. Appellant did not testify but offered proof that he was emotionally disturbed and had other mental and physical problems.

■ Summed up, the evidence of guilt in this case was overwhelming. The element of malice may be supplied by the use of a deadly weapon. *State v. Gilbert,* 612 S.W.2d 188 (Tenn.Cr.App.1980). A jury may infer premeditation and deliberation from the circumstances of the case, such as the fact that appellant repeatedly shot the unarmed decedent. *Taylor v. State,* 506 S.W.2d 175 (Tenn.Cr.App.1973); *Clarke v. State,* 218 Tenn. 259, 402 S.W.2d 863, *cert. denied,* 385 U.S. 942, 87 S.Ct. 303, 17 L.Ed.2d 222 (1966). Appellant continued to shoot the decedent after his pleas to desist, pursued him in order to shoot him again, cut his throat while he was still alive, and apparently amputated his finger in order to

take his rings. These facts fully support the jury's verdict of murder in the first degree. *State v. Story,* 608 S.W.2d 599 (Tenn.Cr.App.1980). The issue as to the sufficiency of evidence is without merit.

■ The appellant also raises issues with regard to the trial court's denial of his motion for a continuance and the State's alleged failure to comply with the discovery motion. The evidence indicates that appellant did not receive a copy of his arrest record until the day of trial and did not acquire an audible tape of appellant's statement to the police until the day before trial. Appellant moved for a continuance, arguing that the State's failure to timely comply with the discovery motion prevented his counsel from being able to adequately prepare for trial. The State pointed out that it did not receive a copy of appellant's F.B.I. "rap sheet" until the day of the trial. In denying appellant's motion, the trial court noted that appellant should have been aware of his own police record and that any need for appellant's testimony would not arise until later in the week, thus giving appellant adequate time in which to decide whether to take the stand. Counsel was appointed for appellant at least six months prior to trial. This was sufficient time in which to prepare a defense. Moreover, we note that appellant has not made any specific showing of prejudice. *State v. Briley,* 619 S.W.2d 149 (Tenn.Cr.App.1981). These issues are overruled.

■ Appellant next argues that the State failed to provide him with certain exculpatory evidence. He first notes the State's failure to reveal the police records of two of its witnesses, Earl and Carl Hill. The exculpatory nature of this evidence is questionable, and both witnesses fully described their prior convictions on direct examination. Appellant also notes the failure to advise appellant that Carl Hill had seen the decedent unloading a bulldozer track shortly before the murder. This would not serve to exculpate the appellant; furthermore, this information was apparently within appellant's knowledge, because Hill testified that he had told appellant about

this observation before the murder. Likewise, there is no evidence that the name of a witness to the theft of the bulldozer track, Edward Yarbro, was intentionally withheld or that his testimony would have been exculpatory. This issue is overruled.

■ The next issue is whether it was improper to allow the introduction of testimony by Kenneth Treece when he had no knowledge as to the amount of money that the victim had on the day of the murder. On March 25, 1981, the day before the murder, Treece saw Lipford carrying $3,100.00 in one hundred dollar bills. Lipford's wife testified that the decedent usually carried large sums of money. Coupled with the fact that $1,044.00, mostly in one hundred dollar bills, was found on appellant when he was arrested, Treece's testimony was relevant and admissible. This issue is without merit.

■ Relying on *Martin v. State,* 542 S.W.2d 638, 641 (Tenn.Cr.App.1976), the appellant next asserts that the State should not have introduced evidence that the victim's throat was cut, since the indictment charged that the homicide was committed with a pistol. The evidence of stabbing was relevant and admissible to show malice, premeditation and deliberation. This issue is overruled.

■ Appellant's next complaint is in regard to the failure of the State to provide him with a recording of a statement allegedly made by Earl Hill on March 28, 1981. There is no clear evidence that such a recording was actually made. In addition, Hill admitted in his testimony that he initially lied to the authorities about the murder because he feared retribution from the appellant. Since Hill admitted to lying, the alleged recording would have had questionable value as an impeachment device. With no error here, the issue is overruled.

■ Appellant argues that a statement he gave to police was obtained in violation of his Fifth Amendment rights and should not have been admitted at trial. Before being questioned, appellant was fully advised of his *Miranda* rights. When asked if he wanted to talk, he replied "I'd rather not". The sheriff repeated this statement, saying, "You'd rather not talk to us?" Without any further prompting, appellant then began giving his reasons for shooting Lipford. The evidence supports the trial court's ruling that the statement was freely and voluntarily given. This issue is overruled.

■ A defense witness who testified as to appellant's good character was asked by the State on cross-examination whether she was aware of appellant's prior arrest record. An objection was interposed and sustained. Appellant contends that the trial court should have declared a mistrial. The denial of the mistrial motion was not error. This issue is overruled.

■ It was not improper for the State to suggest in its closing argument that appellant cut off the victim's finger and stole his wedding ring. This was a logical inference from the evidence which showed that decedent ordinarily wore a wedding band, that his left ring finger was freshly severed with a sharp instrument, that the ring was missing when the body was found, and that the appellant gave his brother-in-law some blood-stained rings on the day after the murder. Appellant also asserts that the attorney general commented on his failure to testify, but the record does not support this contention. This issue is overruled.

■ Appellant's final complaint arises from a comment made by a juror to appellant's counsel. In response to appellant's request for a recess after the State rested its case, the juror stated, "We're going to remember this if we are kept another night." Appellant moved for a mistrial, but the trial court denied the motion, noting that the jurors were smiling when the comment was made and appeared to bear no animosity towards the appellant. The fact that the jury deliberated only twenty-six minutes before finding guilt does not indicate a predisposition against appellant. *Anglin v. State,* 553 S.W.2d 616 (Tenn.Cr.

App.1977). This issue overruled, the judgment of the trial court is affirmed.

WALKER, P.J., and TATUM, J., concur.