**STATE of Tennessee, Appellee,**

v.

**Richard CALDWELL, Appellant.**

Supreme Court of Tennessee,
at Jackson.

April 30, 1984.

Certiorari Denied Oct. 1, 1984.
See 105 S.Ct. 231.

William M. Leech, Jr., Atty. Gen. and Reporter, Wayne E. Uhl, Asst. Atty, Gen., Nashville, J.G. Woodall, Dist. Atty. Gen., Roger D. Moore, Asst. Dist. Atty. Gen., Jackson, for appellee.

Howard F. Douglass, Lexington, for appellant.

**462**

## OPINION

DROWOTA, Justice.

In this case the Defendant, Richard Caldwell, Jr., has appealed his conviction of murder in the first degree, and the sentence of death. Appeal was taken to this Court as provided by statute, T.C.A. § 39–2–205. Caldwell has raised numerous issues on appeal. After careful review of the entire record and the law, we are of the opinion that no reversible error was committed in the trial, that the verdict and sentence are sustained by the evidence, and that the sentence of death under the circumstances of this case is in no way arbitrary or disproportionate. *See State v. Laney,* 654 S.W.2d 383 (Tenn.1983); *Houston v. State,* 593 S.W.2d 267 (Tenn.1980), *cert. denied,* 449 U.S. 891, 101 S.Ct. 251, 66 L.Ed.2d 117. We, therefore, affirm the conviction and the sentence.

Caldwell first challenges the sufficiency of the evidence on which he was convicted. He argues that the trial court should have granted his motion for judgment of acquittal, since the evidence introduced during the trial was insufficient to sustain his conviction. Since Caldwell stands convicted of first degree murder, he has lost the presumption of innocence which he carried at trial. *State v. Grace,* 493 S.W.2d 474, 476 (Tenn.1973). All conflicts in the testimony must be resolved in favor of the State. *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978). After viewing the evidence in the light most favorable to the State, we must affirm the conviction if any rational trier of fact could have found Defendant guilty beyond a reasonable doubt. TRAP 13(e); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The victim, Tony Climer, age 31, was living with his parents at the time of his disappearance on February 6, 1981. On that Friday evening he went with his parents to Moody's Disco, a community dance hall. He was last seen about 11:15 p.m. after telling his father that he was going out to get some air. The hall closed at midnight and he was nowhere to be found, even though he had left his car and left his jacket on a chair in the dance hall. He had been wearing a blue and white checked shirt, blue denim pants, and cowboy boots. No one saw him leave. He had been seen at the dance talking with the Defendant, Caldwell, and his teenage son, Virgil. When later approached by the owner of the disco, Caldwell denied knowing Climer but Climer's mother testified that Caldwell told her that her son was in Illinois with his wife, who had recently left him. Caldwell claimed that Climer had run off with his wife, and he offered to put up a reward for their apprehension.

Exactly seven weeks later, on the night of March 27, 1981, Caldwell was arrested by a state trooper for public drunkenness and taken to the Chester County jail. His son, who was with him, was also detained. On the morning of March 28, Caldwell's son led law enforcement officers to a wooded area in Decatur County where they found the partial skeletal remains of a man, including a skull, teeth, some bones and some hair.

That afternoon while being interrogated by the Chester County authorities, Caldwell told the sheriff that Climer had left the dance with him and his son in his truck. He stated that Climer had made sexual advances toward him and his son. Later while they were at Caldwell's house drinking whiskey, Climer "slapped whiskey" in the Defendant's eyes. Caldwell "went crazy" and shot Climer with a shotgun. Climer was either sitting on or fell onto a mattress in the room. After taking Climer's body to Decatur County and stripping it, Caldwell brought Climer's clothing back to his house where he burned it along with the mattress to prevent identification.

At the same time Caldwell's son was leading officers to the skeletal remains in Decatur County, other officers went to Caldwell's deserted house in Henderson County. The investigation revealed stains on the living room wall, three .410 caliber shotgun shells in the front yard, and on the back porch was found a burned mattress

with blood stains and burned fabric. Climer's mother identified the charred blue and white checked cloth as having come from the shirt her son had worn the night he disappeared. The stains on the wall inside the house were blood, either animal or human. The shotgun shells had been fired from a gun Caldwell had owned in February. An autopsy revealed that the man whose bones were found had died from two shotgun wounds fired through the back of his skull. These wounds had entered at approximately the same place in the back of the skull, but had exited from different locations in the front. Hair found near the skull was the same color as Climer's; and the skull's teeth matched Climer's dental records.

Caldwell's daughter and son-in-law testified that the wall in Defendant's house had become blood stained when they slaughtered animals near it. Caldwell did not testify. His son, Virgil, had disappeared by the time of the trial and did not testify.

■ Caldwell was convicted of premeditated first degree murder. T.C.A. § 39-2-202. A conviction under this statute must be based upon evidence that the killing was willful, malicious, deliberate, and premeditated. Malice may be inferred from the use of the shotgun. *See State v. Gilbert*, 612 S.W.2d 188 (Tenn.Cr.App. 1980). Deliberation and premeditation was shown by the multiple shots to the victim's skull and the fact he was shot from behind. *See State v. Adkins*, 653 S.W.2d 708, 713 (Tenn.1983). Defendant's attempts to hide the body and burn the evidence of the murder also evinced some degree of deliberation and premeditation.

■ The direct and circumstantial evidence in this case clearly established that Caldwell had premeditatedly and maliciously killed Climer. Caldwell's confession was corroborated by the circumstances of the victim's disappearance, Defendant's possession of the murder weapon at the time of the offense, the discovery of the shotgun

shells and the victim's partially burned shirt at Defendant's house, and the ability of Defendant's teenage son to lead the authorities to Climer's body. Based upon the foregoing evidence, we have no hesitancy in holding that the evidence against Caldwell was sufficient to support the first degree murder conviction beyond a reasonable doubt. The evidence does not preponderate in favor of his innocence and against his guilt.

■ Caldwell next asserts that his statement taken in the Chester County jail on the afternoon of March 28, was taken in violation of his Fifth Amendment rights against self-incrimination. The record reflects that before being interviewed by the Chester County Sheriff, the Defendant was advised of and acknowledged that he understood his rights to remain silent and to have an attorney present during questioning, as well as the right to stop answering questions at any time. The following exchange took place between the Sheriff and the Defendant:

Sheriff: Do you understand your rights?

Caldwell: Yeah, I understand my rights.

Sheriff: Alright sir. Do you want to talk to us about what's happened?

Caldwell: I'd rather not.

Sheriff: You'd rather not talk to us?

Caldwell: I didn't realize what I was doing. Pulled up and a man was stripping my dozer down. I just went crazy. That's all I got to say about that.

The Sheriff then asked questions to clarify these statements about the Lipford murder.[1] Caldwell freely answered, and the interrogation gradually moved to the Climer homicide.

Sheriff: Well, we have been down there today of course, and got Mr. Lipford, you know, got his body out of that creek down there in Decatur County and we also went down there today and down there just past that church on the right and that little grocery

---

1. On the afternoon of March 26, 1981, the Defendant shot and killed Carl Lipford. *State v. Caldwell*, 656 S.W.2d 894 (Tenn.Cr.App.1983).

Lipford had stolen a track from Caldwell's bulldozer.

store and we got the remains of Larry Climer. Did Larry make you mad? Caldwell: Slapped whiskey in my eyes. Caldwell never hesitated to answer the questions, and never indicated any unwillingness to talk with the officers about the Climer matter.

The Defendant contends that he had expressed his desire not to be questioned and the questioning should have stopped when he expressed his desire. He argues that when he said "I'd rather not", he had shown he intended to exercise his right to cut off questioning and that under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966), all questioning must cease. The Sheriff's question, "You'd rather not talk to us?" was a neutral, spontaneous question, not designed to elicit a confession but to clarify Defendant's wishes. *See State v. Lamb,* 213 Neb. 498, 330 N.W.2d 462, 466 (1983). The Defendant voluntarily began to talk after this question and what he said was not really responsive to it.

The Defendant acknowledged that he understood his rights, and spoke readily to the investigating authorities. There was no evidence of coercion or prolonged interrogation, and Caldwell was sober and well rested at the time he admitted to the murders. The evidence clearly supports the decision of the Trial Judge that the statements were given freely and voluntarily without any compulsion. This identical issue was overruled in *State v. Caldwell,* 656 S.W.2d 894, 897 (Tenn.Cr.App.1983), involving this Defendant's statements in the Lipford murder.

■ The Defendant next contends that it was error for the Trial Judge to allow the above referred to statement to be read to the jury when a tape recording of the statement was available to the State and would have represented the "best evidence" of the statement. Defendant insists that the recording would best demonstrate to the jury the conversation that took place between himself and the Sheriff, including the tone of voice and the actual responses and time delays in the giving of answers. This Court has freely admitted sound recordings. *State v. Jones,* 598 S.W.2d 209, 223 (Tenn.1980); *Smith v. State,* 207 Tenn. 219, 229, 338 S.W.2d 610 (1960); *Kirkendoll v. State,* 198 Tenn. 497, 517, 281 S.W.2d 243 (1955); *See* D. Paine, *Tennessee Law of Evidence,* § 240 (1974 & 1981 Supp.). However, the statement given to the Chester County Sheriff deals not only with the Climer murder but also with the Lipford murder. In fact, nearly nine pages of the twelve page statement involve the Lipford case.[2] Instead of playing the entire tape recording to the jury, a redacted transcript was read by the Sheriff who interrogated the Defendant. A case closely in point is *State v. King,* 557 S.W.2d 51 (Mo.App.1977), where the court recognized that the best evidence rule generally requires that a taped confession, rather than a transcript of the tape, be admitted. That Court held the tape was unavailable because it contained references to prior crimes prejudicial to the Defendant and deletion was difficult. Here, as in *King,* use of the transcript actually protected the Defendant. Our comparison of the tape and the transcript reveals that the transcript is an accurate reproduction of the tape. The Trial Judge had listened to the tape and read the transcript prior to ruling on Defendant's "best evidence" objection. Under the circumstances of this case, we find no error.

■ The Defendant avers that it was error for the Trial Court to allow the introduction of his conviction for first degree murder in the Lipford case as an aggravating circumstance in this case, since the Lipford murder occurred after the Climer murder. Climer disappeared on February 6, 1981, and Lipford was shot and killed on March 26, 1981. The Defendant was convicted in October 1981 of murdering Lipford. The sentencing hearing in the present case took place on October 7, 1982.

2. As can be seen from the last cited question and answer between the Sheriff and Caldwell, the questions often included references to both victims, Lipford and Climer.

In the course of the hearing the State proved that Caldwell had been convicted in 1981 of murder in the first degree.

The aggravating circumstance to which this prior murder conviction was relevant reads as follows:

> The defendant was previously convicted of one or more felonies, other than the present charge, which involved the use or threat of violence to the person. T.C.A. § 39–2–203(i)(2).

Caldwell claims that using the subsequent murder as an aggravating circumstance permits an *ex post facto* law. The language in the statute, "previously convicted" clearly indicates that the date of the conviction, not of the commission of the crime, is the important factor. The order in which the crimes were actually committed is irrelevant, as long as the convictions have been entered before the sentencing hearing at which they are introduced into evidence. The Florida Supreme Court has interpreted that state's similarly worded aggravating circumstance to focus on the date of conviction. Fla.Stat.Ann. § 921.-141(5)(b). That Court has rejected arguments similar to Caldwell's in several cases. *Daugherty v. State,* 419 So.2d 1067, 1069 (Fla.1982); *Elledge v. State,* 408 So.2d 1021, 1022 (Fla.1981), *cert. denied,* 459 U.S. 981, 103 S.Ct. 316, 74 L.Ed.2d 293 (1982); *Elledge v. State,* 346 So.2d 998, 1001 (Fla. 1977).

 The Defendant next insists that the Trial Court erred in allowing the introduction of Climer's dental records, in that it denied him of his right to confrontation. In identifying the skeleton of Climer, a forensic dental pathologist used Climer's dental records which were prepared by a dentist named W.A. Moats in 1969 at Orlando, Florida, apparently while Climer was in the Naval Reserve. These records had been filed at a Federal Depository in St. Louis. The copies introduced at trial were authenticated and certified as required under Rule 27, Tenn.R.Crim.P. Defendant claims that the failure of the dentist who prepared the records to testify denied him his right to confrontation under *State v.*

*Henderson,* 554 S.W.2d 117 (Tenn.1977). *Henderson* involved the admission of toxicology laboratory reports, prepared specifically for the litigation, through a witness who had not performed the test. In *Henderson,* the Court distinguished the classic business records exception, such as hospital records, made in the course of business and prepared for other use and only incidently found pertinent to litigation. The dental records here seem to fall more into this category and are analagous to hospital records such as those in *People v. Kirtdoll,* 391 Michigan 370, 217 N.W.2d 37 (1974). *See also,* Annot., 69 A.L.R.3rd 22, 39, § 6 (1976). In *People v. Kirtdoll,* the court pointed out that the admission data from a rape victim's hospital record had not been compiled for use in any particular lawsuit, did not involve subjective judgments such as diagnosis, and were to some extent rendered trustworthy by compliance with the business records statute.

Even if Dr. Moats had testified, he could have said little other than what was on the records themselves. Arguably, his testimony would not have been accusatory and he would not have been a witness against the Defendant. *See State v. Robbins,* 512 S.W.2d 265, 268–269 (Tenn.1974). We find no error in the court's admission of Climer's dental records.

 Caldwell avers that the Trial Court erred in failing to instruct the jury on the weight and effect of circumstantial evidence. Defense counsel did not request such an instruction, did not object to the charge given, and did not include this issue in his motion for a new trial. Issues concerning "jury instructions granted or refused" will be treated as waived by the appellate court if not specifically stated in a motion for new trial, Rule 3(e), TRAP; *Bibbs v. State,* 162 Tenn. 646, 652, 39 S.W.2d 1024, 1026 (1931), unless such issue shows a plain error affecting Defendant's substantial right. Rule 52, Tenn.R.Crim.P. While a judge's failure to instruct the jury on the law of circumstantial evidence is a fundamental reversible error where all incriminating evidence is circumstantial,

*State v. Thompson,* 519 S.W.2d 789, 792 (Tenn.1975), if the evidence is both direct and circumstantial, the trial judge does not commit reversible error by failing to so instruct if not requested to do so. Both direct and circumstantial incriminating evidence was presented in this case, and we find no error in the Trial Court's failure to charge the jury on the law as to circumstantial evidence.

During closing argument, Defendant's court-appointed counsel stated: "We have never denied at any time that Richard Caldwell shot this man." Defendant avers that with this statement his attorney effectively told the jury he was guilty and that he was denied effective assistance of counsel. Where a defense attorney repeatedly states to the jury throughout closing argument that his client is "guilty," "guilty as charged," "guilty beyond a reasonable doubt," and the client has pled not guilty, a criminal defendant is deprived of effective assistance of counsel. *Wiley v. Sowders,* 647 F.2d 642, 649–650 (6th Circuit 1981). Counsel, however, may stipulate to a particular element of the charge or issue of proof if he believes it tactically wise and his argument does not amount to a functional guilty plea. *Id.; cf. Commonwealth v. Festa,* 388 Mass. 513, 447 N.E.2d 1, 3 (1983).

Defense counsel was faced with overwhelming proof that Defendant had shot the victim in the head with a shotgun, had carried the body to another county to hide it and had burned the victim's clothing to prevent identification. Much of the proof, particularly Defendant's confession to the crime, was unimpeachable. Defendant's counsel was unable to present any proof to rebut the State's theory, except to prove an explanation for the blood on the wall. Defendant chose not to testify.

The State argues that this candid admission by counsel that Defendant had shot the victim enhanced counsel's credibility with the jury, and left open the opportunity for the jury to find Defendant guilty of a lesser included offense not punishable by death. Counsel emphasized Caldwell's anger when the victim threw whiskey in his eye, that both Defendant and victim had been drinking, and clearly was trying to avoid a first degree murder conviction by convincing the jury there was no premeditation. We find the strategic choice to present the case to the jury in this manner was competent and reasonable, and Defendant has failed to show that this decision by itself constituted ineffective assistance of counsel.

Defendant's representation is within the "range of competence demanded of attorneys in criminal cases." *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn.1975). Tactical and strategic decisions made by defense counsel will not be second-guessed. *Hellard v. State,* 629 S.W.2d 4, 9–10 (Tenn. 1982).

Defendant concludes by arguing that the death penalty is cruel and unusual; the death penalty lacks penological justification; and death by electrocution is cruel and unusual punishment since it involves torture and prolonged suffering. This Court has rejected similar arguments in past cases. *See State v. Melson,* 638 S.W.2d 342 (Tenn.1982), *cert. denied,* 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1984); *State v. Austin,* 618 S.W.2d 738 (Tenn.1981), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981); see also *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

The Trial Court's rulings on all issues raised herein, the verdict of the jury, and the imposition of the death penalty are all affirmed. The date of execution is set for July 30, 1984, unless stayed or otherwise ordered by this Court or other proper authority. Costs are assessed to Appellant.

FONES, C.J., and COOPER and HARBISON, JJ., concur.

BROCK, J., concurs in part and dissents in part.

BROCK, Justice, concurring in part and dissenting in part.

For the reasons stated in my dissent in *State v. Dicks,* 615 S.W.2d 126 (Tenn.1981),

I would hold that the death penalty is unconstitutional; but, I concur in all other respects.