IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 7, 2008 Session

## CURTIS PALMER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-04188     James M. Lammey, Jr., Judge**

**No. W2008-00102-CCA-R3-PC  - Filed March 9, 2009**

The petitioner, Curtis Palmer, appeals the post-conviction court's denial of his petition for post-conviction relief. On appeal, he argues that he received the ineffective assistance of counsel. Specifically, he argues that his trial counsel was ineffective as follows: (1) counsel admitted the petitioner's guilt during the trial without the petitioner's consent; (2) counsel failed to adequately investigate possible grounds for a speedy trial; (3) counsel failed to challenge invalid indictments; and (4) counsel failed to properly litigate the suppression of evidence. After a thorough review of the record and the parties' briefs, the judgment of the post-conviction court denying post-conviction relief is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Samantha R. Neumann, Memphis, Tennessee, for the appellant, Curtis Palmer.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and David Zak, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### BACKGROUND

The petitioner was convicted of two counts of first degree felony murder. Thereafter, his convictions were merged and he was sentenced to life imprisonment without the possibility of parole. The petitioner appealed arguing, *inter alia*, that he was denied the right to a speedy trial and that the trial court erred in denying his motions to suppress. On direct appeal, this court affirmed the petitioner's conviction and sentence. *State v. Curtis Palmer*, No. W2004-01748-CCA-R3-CD, 2005 WL 3416319 (Tenn. Crim. App., at Jackson, Dec. 9, 2005), *perm. app. denied* (Tenn. May 1,

2006). The following is a recitation of the convicting evidence set forth in this court's opinion on direct appeal:

> Patrice Johnson and the victim, Patricia Miller, were friends and worked together at the Regional Medical Center in Memphis. Ms. Johnson said that she received a call from the medical center on January 1, 2002, because the victim had not reported to work that morning. Concerned, Ms. Johnson drove to the victim's home and found a door near the carport cracked open. Ms. Johnson called the police. Officers found the victim dead inside her home.
>
> Carmalita Harris, the victim's daughter, said she stayed with a friend on New Year's Eve and spoke with her mother by telephone around 12:45 a.m. on January 1, 2002. Ms. Harris said that the victim owned three car speakers and an amplifier which she was attempting to sell. The speakers were white, black, and red, and the material on the face of one of the speakers was torn. Ms. Harris identified the speakers found in Defendant's car as her mother's.
>
> Ms. Harris said she inspected her bedroom after the victim was discovered. She found various items on her bed which were not there the day before, and a bullet hole in the ceiling. Her bedroom window was raised, and the air conditioner had been removed.
>
> Officer Willie Mathena with the Memphis Police Department responded to the call from Ms. Johnson. Officer Mathena found the victim lying on the floor in the den. In Ms. Harris' bedroom, Officer Eric Freeman found a "bullet strike" on a bedside table, and noticed that the air conditioner had been taken out of the bedroom window. There was a bullet hole in the ceiling. A bullet fragment was found near the victim, and a second bullet fragment and three shell casings were found in the den.
>
> Sergeant Gerald Crowson and Sergeant Todd Pierce, with the Southhaven, Mississippi Police Department, observed Defendant drive his Chevy Caprice into a Blockbuster parking lot around 6:00 p.m. on January 1, 2002. Defendant went inside the Blockbuster store. Sergeant Pierce asked Defendant to step outside the store so he could ask him a few questions. Sergeant Pierce said that Defendant was cooperative. Sergeant Crowson looked in a window of Defendant's car and noticed a two-tone, small caliber semiautomatic pistol lying on the floorboard of the driver's side of the car.
>
> Officer Danielle McKenzie, with the Horn Lake, Mississippi Police Department, was dispatched to the scene. She read Defendant his *Miranda* rights. Officer McKenzie said that Defendant told her he did not "understand what an attorney was." Officer McKenzie explained the role of an attorney and said that Defendant appeared to understand. Officer McKenzie said that the officers discovered three car speakers and an amplifier in the trunk of Defendant's vehicle.

Sergeant Nathan Berryman with the Memphis Police Department said that one of the victim's friends told him she had spoken with the victim on the telephone around 10:30 p.m. on December 31, 2001. The victim told her friend that she had another call coming in and put the friend on hold. When the victim returned to the line, she told the friend that she needed to speak to the man on the other line about selling him her car speakers and amplifier. Defendant was identified as the caller from the victim's telephone caller identification box.

Sergeant Berryman said that Defendant's aunt called the police department on January 2, 2002, and informed them that Defendant had been incarcerated in Mississippi. Sergeant Berryman and Sergeant Gossett traveled to Hernando, Mississippi, and began interviewing Defendant at approximately 5:00 p.m. Defendant was read his *Miranda* rights and signed a waiver of those rights. Sergeant Berryman said that Defendant was calm and appeared to understand his rights. After offering different versions of how he had gained possession of the speakers found in the trunk of his car, Defendant told Sergeant Berryman, "I messed up, didn't I." Defendant asked to speak to Sergeant Berryman alone and implicated himself in the commission of the homicide of the victim. Sergeant Berryman read Defendant his *Miranda* rights a second time around 6:30 p.m., and Defendant gave a written statement which was read to the jury during the trial.

In his statement, Defendant said that he met the victim a few days before Christmas, and she told Defendant she had three car speakers and an amplifier for sale. Defendant said that while he was trying to raise the cash to buy the equipment, he and the victim began seeing each other socially. Defendant said he called the victim several times on December 31, 2001, but did not get an answer. He went to the victim's home "about eight something that night and parked in the driveway." The victim did not answer the door when he knocked and rang the doorbell. Defendant said he went to the back of the house and took an air conditioner out of one of the windows. He heard the victim call out, "Who's there." Defendant said he ran away but decided to go back. He jumped through the open window in the back of the house. He said the victim walked away from him saying, "I'm fixin[g] to blow yo[ur] ass off." Defendant said he shot the victim five or six times with a .380 caliber handgun. Defendant retrieved the victim's car speakers and amplifier from a room in the victim's house and put them in the trunk of his car. Defendant said that the victim was still breathing when he left. Defendant said he drove to Mississippi after stopping at a store to buy beer, and asked a friend to hook up the speakers and amplifier in his car.

On cross-examination, Sergeant Berryman said that the shell casings found at the victim's home were .380 caliber. He said that different kinds of weapons were capable of firing .380 caliber bullets.

Dr. Teresa Allen Campbell stated that she was a forensic pathologist and performed an autopsy on the victim on January 2, 2002. Dr. Campbell said that the victim died

as a result of multiple gunshot wounds. Dr. Campbell said that the absence of soot or gunpowder on the victim's clothing indicated that the shooter was standing more than two feet away from the victim when the weapon was fired. One bullet penetrated the victim's upper right back causing the right lung to hemorrhage and collapse. Dr. Campbell said this wound was sufficient to cause death, although the victim could have possibly recovered from this wound if she had received immediate medical treatment. A second bullet entered the victim's body in the middle of her back, traveled through her body, and pierced her abdominal wall. Dr. Campbell said this wound was also sufficient to cause death. Dr. Campbell said that there was not a lot of bleeding associated with the abdominal wound because she believed that the victim had already expired from the chest wound. Two other bullets caused superficial wounds to the victim's back and upper leg.

*Id.* at *1-3.

In November of 2006, the petitioner timely filed a petition for post-conviction relief. Thereafter, post-conviction counsel was appointed, an amended petition was filed, and an evidentiary hearing was held. At the hearing, the petitioner complained that counsel informed the jury during closing argument that the petitioner was guilty "of something" without his consent. The petitioner then read an excerpt of counsel's closing argument from the trial transcript wherein counsel said to the jury, "ladies and gentlemen, I'm not telling you what you should find. I'm not telling you to let him go. What the [the petitioner] did is inexcusable. It's a crime. There is no question about it, and you're going to convict him of a crime, but it's your job to decide what that crime is." The petitioner asserted that counsel never discussed with him the strategy of pursuing a conviction for a lesser-included offense.

The petitioner next complained that counsel improperly argued the issue of a speedy trial. The petitioner said that counsel erroneously argued that the triggering date for the speedy trial motion was the date of the indictment in 2003 rather than the date of the arrest in 2002. The petitioner suggested that if the appellate court would have understood that his triggering date was earlier, he would have prevailed on his speedy trial issue. The petitioner also asserted that counsel failed to challenge the validity of the indictments, which lacked factual allegations. The petitioner finally complained that counsel was ineffective in failing to adequately argue suppression of the gun at the suppression hearing based on a violation of the Fourth Amendment. The petitioner also asserted that counsel did not effectively cross-examine the officers who testified at the suppression hearing.

On cross-examination, the petitioner admitted that counsel cross-examined the police officers about finding the gun. He also admitted that after his arrest, his car was impounded. However, he asserted that the gun was put in his car by his co-defendant and that the victim's property found in his car "happened to be there." The petitioner also asserted that he was tricked into making a confession to the murder of the victim.

Trial counsel testified that he began representation of the petitioner in November 2003. Counsel recounted that the petitioner confessed to police revealing that he shot the victim in her

house and took the victim's stereo equipment. Counsel also noted that the police found the stereo equipment and the gun used to murder the victim in the petitioner's vehicle. Counsel recalled that he informed the petitioner that he would try to suppress the gun and property taken from the victim along with the petitioner's statement to police. Counsel also recalled that he warned the petitioner that his chances at trial were not good and recommended that the petitioner take a plea deal if offered. Counsel said that the petitioner was in total agreement and never denied committing the crime. Counsel also pointed out that the petitioner admitted that he shot and killed the victim and took her property while under oath during the sentencing hearing.

Counsel testified that his motion to suppress did not prevail, and as a result, the petitioner's confession was admitted into evidence and corroborated by photographs, crime scene evidence, and witness testimony. Given the overwhelming evidence against the petitioner, counsel thought the best thing to do was to attempt to persuade the jury to find the petitioner guilty of a lesser-included offense. Counsel said he attempted to use the petitioner's confession which reflected that the petitioner had a relationship with the victim in effort to show there was more to the case than a felony murder. Counsel conceded that he did not have the petitioner's specific consent to admit guilt, but counsel emphasized that the petitioner had been "on board" with trying to get something less than a conviction for felony murder. Counsel said that the petitioner indicated he was very happy with counsel's closing argument until the jury came back with their verdict of guilty.

Regarding the petitioner's speedy trial complaint, counsel said that he "brought out everything" in his argument to the trial court, including the petitioner's arrest date. Regarding the petitioner's invalid indictment complaint, counsel said that he read the indictments and did not see any problems with them. Counsel said that the indictments notified the petitioner of what the charges were and what the state would prove. Counsel said there was never any confusion between the petitioner and himself as to what criminal offenses the state was attempting to prove. Regarding the petitioner's Fourth Amendment complaint, counsel said the issue was litigated and it was clear from the testimony of a Mississippi officer at the suppression hearing that he saw the murder weapon in plain view. Counsel said that the petitioner was confusing the proof with the argument.

At the conclusion of the hearing, the post-conviction court questioned whether the petitioner testified truthfully and accordingly accredited the testimony of counsel. After considering the petitioner's allegations, the post-conviction court held that the petitioner failed to prove that counsel was deficient, or that the petitioner was prejudiced by counsel's performance under the test in *Strickland v. Washington*. The post-conviction court denied the petition for post-conviction relief by written order entered April 11, 2008. The petitioner filed a timely notice of appeal.

## ANALYSIS

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations of fact set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings, such as findings concerning the credibility of witnesses and the weight and value given their testimony, is

de novo with a presumption that the findings are correct. *See id.* Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001).

In order to establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance, "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Once the petitioner proves that counsel's representation fell below a reasonable standard, the petitioner must also prove prejudice. Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Both deficient performance and prejudice must be established to prove ineffective assistance of counsel. *Id.* at 697. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Id.*

**I.**

The petitioner first avers that trial counsel was ineffective in admitting the petitioner's guilt before the jury without the petitioner's consent.

"Cases addressing a defense counsel's admission that his client is guilty generally fall into one of two categories." *Paul Galbreath v. State*, C.C.A. NO. 01C01-9603-CC-00097, 1997 WL 576495, at *2 (Tenn. Crim. App., at Nashville, Sept. 18, 1997). In some cases, defense counsel's admission of his client's culpability is characterized as a "functional guilty plea" and constitutes the ineffective assistance of counsel. *See, e.g., Wiley v. Sowders*, 647 F.2d 642, 649-50 (6th Cir. 1981). In other cases, however, counsel's admission of his client's culpability has been characterized as a reasonable strategic choice under the circumstances since it leaves open the possibility of the jury finding the defendant guilty of a lesser-included offense. *See, e.g., State v. Caldwell*, 671 S.W.2d 459, 466 (Tenn. 1984).

As previously set forth, the petitioner's defense counsel admitted in closing argument that the petitioner was guilty of a crime. However, counsel testified at the post-conviction evidentiary hearing that the petitioner understood the evidence against him and was "on board" with trying to get something less than a conviction for felony murder. Counsel explained that he was faced with

overwhelming proof that the petitioner shot and killed the victim in her home and took the victim's property. Counsel noted that the petitioner's confession indicated that he and the victim had some kind of a relationship. Therefore, counsel suggested to the jury that the petitioner was culpable of "something" in attempt to convince the jury that the petitioner was guilty of a lesser-included offense and not the charged offense of first degree felony murder.

The admission of a client's guilt by defense counsel is certainly a serious and weighty decision that ought to be made only after consultation with the client. Indeed, without the acquiescence of the client, such an admission by defense counsel may constitute ineffective assistance of counsel. *See Galbreath*, 1997 WL 576495, at *2. However, it is also true that such an admission may be a reasonable tactical decision where the client's acquiescence is obtained. *Id.* In the instant case, the post-conviction court found that counsel's admission of the petitioner's guilt was a reasonable tactical decision. We agree. The record reflects that the petitioner understood the overwhelming evidence against him and acquiesced to counsel's strategy of trying to get a lesser conviction than first degree felony murder. During closing arguments, counsel did not admit that the petitioner was guilty of the charged offense; but rather, counsel admitted that the petitioner was culpable of some crime in attempt to secure acquittal of the charged offense. Accordingly, we conclude that the evidence does not preponderate against the post-conviction court's findings and the petitioner is not entitled to relief on this issue.

## II.

The petitioner next argues that counsel failed to correctly identify and argue the commencement of the speedy trial period. Specifically, the petitioner asserts that trial counsel erroneously argued that the date of the petitioner's indictment in June 2003 triggered his right to a speedy trial rather than the date of his arrest on January 2002. As proof of his arrest, the petitioner points to the first page of the written statement he gave to police wherein a warning was given that he was "under arrest and may be charged with First Degree Murder in connection with this complaint." The petitioner asserts that but for counsel's mistake regarding the triggering event for a speedy trial, this court would have reached a different conclusion regarding this issue on direct appeal.

Once the state initiates criminal proceedings, the right to a speedy trial is implicated pursuant to the Sixth Amendment to the United States Constitution and to Article 1, section 9 of the Tennessee Constitution. When a defendant contends that he was denied his right to a speedy trial, the reviewing court must conduct a four part balancing test to determine if this right was, indeed, abridged. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). This test includes consideration of: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) the actual prejudice suffered by the defendant because of the delay. *Id. See also State v. Bishop*, 493 S.W.2d 81, 84-85 (Tenn. 1973) (implicitly adopting the *Barker* balancing test for our state's constitutional and statutory right to a speedy trial). Generally on direct appeal, the first *Barker* factor, length of delay, is a threshold factor, serving as the triggering mechanism that will necessitate consideration of the other three factors. *Barker*, 407 U.S. at 530. However, of "these factors, and crucial to supporting a claim for ineffective assistance of counsel, the single most important factor

is prejudice to the defendant, and the critical inquiry concerning prejudice 'is the impairment of the ability to prepare a defense." *State v. James Alan Bates*, No. E2007-00187-CCA-MR3-PC, 2008 WL 465271, at *8 (Tenn. Crim. App., at Knoxville, Feb. 21, 2008), *perm. app. denied* (Tenn. June 23, 2008) (citations omitted).

We begin our review by reiterating that it is the petitioner who bears the burden in a post-conviction proceeding to prove his factual grounds for relief by clear and convincing evidence. At the post-conviction hearing, trial counsel testified that he pursued the petitioner's right to a speedy trial and "brought out everything" in his argument, including the petitioner's arrest date. The post-conviction court accredited trial counsel's testimony and found that counsel competently raised the issue of speedy trial during appellate proceedings. We agree.

As the record reflects, the petitioner through counsel challenged the denial of his constitutional right to a speedy trial on direct appeal. In making the challenge, the petitioner submitted "that his right to a speedy trial was triggered when the Memphis police officers interviewed him in Mississippi on January 2, 2002, although he was not charged with the Tennessee offenses until his indictment in June 2003." *Palmer*, 2005 WL 3416319, at *9. Based on a review of the record, this court found that the petitioner was in custody in Mississippi on unrelated charges of armed robbery in January of 2002, but he was not charged with the victim's murder in Tennessee until June of 2003. *Id*. at *8. Accordingly, this court found that "the triggering event for speedy trial purposes . . . was [the petitioner's] indictment for the current charges in June 2003, not his initial interview with the Memphis police on January 2, 2002." *Id*. at *10. Finding that the length of the delay was not presumptively prejudicial, this court then determined that the petitioner's right to a speedy trial was not violated. *Id*. *See Barker*, 407 U.S. at 530 ( "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.").

Contrary to the petitioner's complaint, it is clear from this court's opinion on direct appeal that the petitioner's right to a speedy trial was triggered when he was charged with first degree murder in 2003, and not while he was in custody on unrelated charges of armed robbery in 2002. *See United States v. Marion*, 404 U.S. 307, 320 (1971); *State v. Utley*, 956 S.W.2d 489, 492 (Tenn. 1997) (noting that "it is 'either a formal indictment or information or else the actual restraint imposed by arrest and holding to answer a criminal charge' that triggers the speedy trial analysis."). The petitioner's reference to the first page of his written confession does not establish clear and convincing proof that he was arrested for first degree murder on June 2, 2002, and placed in custody on this date as a direct result of the first degree murder charge rather than remaining in custody on the unrelated robbery charges. Additionally, like the post-conviction court, we fail to discern how trial counsel was deficient in arguing this issue. Success or perfection is not the standard of measure for counsel's performance; rather, a petitioner is entitled only to constitutionally adequate representation. *See Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). Furthermore, assuming *arguendo* that the petitioner was placed under arrest for the felony murder in 2002, this court on direct appeal found no proof of actual prejudice sustained by the petitioner because of the delay. *Palmer*, 2005 WL 3416319, at *11. Similarly, in the case *sub judice*, the petitioner has failed to identify and present proof of actual prejudice as a result of the delay. Accordingly, we conclude

that the petitioner did not carry his burden on this issue and that the post-conviction court correctly denied his petition as to this issue.

**III.**

The petitioner next contends counsel was ineffective because he did not challenge the validity of the indictments. Specifically, the petitioner argues that the indictments charging him with first degree felony murder were invalid because the indictments failed to state any specific facts which formed the basis for the felony murder.

We begin our review by reciting the language of Count 1 of the petitioner's two count indictment for felony murder. Count 2 is similar in its language with exception that it references the underlying felony of theft of property. Count 1 reads in pertinent part as follows:

> CURTIS PALMER during the period of time between the dates of December 31, 2001 and January 1, 2002 in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully and with the intent to commit Aggravated Burglary kill PATRICIA MITCHELL during the perpetration of Aggravated Burglary, in violation of T.C.A. 39-13-202, against the peace and dignity of the State of Tennessee.

An indictment that achieves its "overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements." *State v. Hammonds*, 30 S.W.3d 294, 300 (Tenn. 2000). It is well established that an indictment is sufficient to satisfy notice requirements if it "contains allegations that (1) enable the accused to know the accusation to which answer is required; (2) furnish the trial court an adequate basis for entry of a proper judgment; and (3) protect the accused from a subsequent prosecution for the same offense." *Id*. at 299 (citing *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997). In addition, this court has previously observed that "a felony murder indictment must allege that the killing was committed during the perpetration of a felony, but specific allegations of the elements and facts of the underlying felony are unnecessary." *State v. Alfonzo E. Anderson*, No. W2000-00737-CCA-R3-CO, 2002 WL 1558491, at *2 (Tenn. Crim. App., at Jackson, Jan. 9, 2002) (citations omitted).

In denying relief on the claim that the petitioner raises on appeal, the post-conviction court's order states in pertinent part:

> Petitioner testified that the indictment lacked factual material and allegation constituting the offense. Petitioner conceded that the indictment did include the elements of the charge. [Counsel] testified that he did not see any problem with the indictments when he read them. [Counsel] testified that the indictment provided adequate notice and did not cause any confusion over the charges against Petitioner. This Court finds that [counsel's] actions did not fall below an objective standard of reasonableness.

We agree with the post-conviction court's findings. The indictments at issue tracked the language of the felony murder statute, made specific reference to the statute, stated the underlying felony, provided the date of the offense, and identified the name of the victim. As such, the indictments satisfied both constitutional and statutory requirements and were valid. Accordingly, the petitioner has not met his burden of demonstrating that counsel was deficient in failing to challenge the indictments or that the petitioner was prejudiced as a result of that alleged deficiency. The issue is without merit.

**IV.**

The petitioner next contends that he received the ineffective assistance of counsel because his trial counsel failed to properly litigate the suppression of evidence at the motion to suppress hearing and on appeal.

Addressing this issue, the post-conviction court found the following:

> Petitioner testified that trial counsel produced evidence at the [a]ppellate hearing which counsel failed to put on during the [s]uppression [h]earing. Petitioner conceded, however, that trial counsel did cross-examine the prosecution's witnesses at the [s]uppression [h]earing, which did provide proof. Petitioner further agreed that he had no witnesses of his own at the [s]uppression [h]earing. [Counsel] testified that while he did tell the judge that he did not have any proof to put on, he did argue . . . based on cross-examination [that] the court should suppress the evidence. [Counsel] further testified that at the Court of Criminal Appeals, he provided the same argument as at the trial level. This Court finds that Petitioner has failed to prove how [counsel's] actions fell below an objective standard of reasonableness.

We agree with the post-conviction court's findings. The record establishes that counsel filed a motion to suppress the evidence and effectively represented the petitioner at the hearing on the motion to suppress. Nonetheless, the trial court held that the evidence was not subjected to an illegal search and seizure. On direct appeal, this court reviewed the petitioner's suppression issue and found as follows:

> Based on our review, the seizure of the gun in Defendant's car by the Mississippi police officers was proper under the plain view exception to the warrant requirement. Moreover, because a gun was discovered in plain view in Defendant's car, the police officers had probable cause to search Defendant's entire vehicle, including the trunk.

*Palmer*, 2005 WL 3416319, at *7. The petitioner's presentation of post-conviction proof regarding this claim is greatly lacking in detail as to how counsel's representation was deficient and how any deficiency prejudiced his case. We also note that the petitioner did not support this argument on appeal with citation to authorities or appropriate references to the record. *See* Tenn. Ct. Crim. App. R. 10(b). Accordingly, we determine that the petitioner failed to carry his burden to show that trial counsel was ineffective and the issue is without merit.

## CONCLUSION

The petitioner has failed to meet his burden of proof regarding his claims of ineffective assistance of counsel, and the post-conviction court correctly denied the petition. Therefore, the judgment of the post-conviction court is affirmed.

_____
J.C. McLIN, JUDGE