IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 12, 2024, at Jackson

## STATE OF TENNESSEE v. ANTHONY WAYNE FOUST

### Appeal from the Criminal Court for Campbell County
No. 18233    Zachary R. Walden, Judge

_____

### No. E2024-00346-CCA-R3-CD
_____

A Campbell County jury convicted Defendant, Anthony Wayne Foust, of theft of property valued at $2,500 or more, and the trial court sentenced him to twelve years of incarceration to be served as a career offender at 60 percent service. On appeal, Defendant contends that (1) the State failed to disclose evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (2) the State failed to preserve evidence in violation *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999); and (3) the trial court erred in limiting Defendant's closing argument. Upon review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Corbin H. Payne (at trial and on appeal) and Brian Sableman (at trial), Knoxville, Tennessee, for the appellant, Anthony Wayne Foust.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Jared Effler, District Attorney General; and David Pollard and Lindsey Cadle, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural History

Defendant's conviction resulted from his stealing a 1992 Toyota Tacoma belonging to the victim, Gary Moore, from the victim's driveway in LaFollette during the early morning hours of April 13, 2019. Police officers recovered the truck and its contents and

returned them to the victim. Defendant was indicted on charges of theft of property valued at $2,500 or more and vandalism of property valued at $2,500 or more. The case proceeded to trial in February 2023, during which the State presented the victim as its sole witness.

The victim testified that items had been stolen out of his truck prior to April 13, 2019, and that as a result, he installed motion detectors and an electrical fence around his home. At approximately 2:15 a.m., on April 13, the victim was awakened by his motion detector in his carport, which sounded like a "foghorn." He retrieved his glasses and a spotlight, exited through the front door of his home, and shined the light under the carport. His truck was running, and the victim saw someone in the driver's seat. The victim walked to the middle of his driveway and shined the spotlight through the rear window of the truck. The victim saw the driver's face as the driver turned while backing the truck down the driveway. The victim had to jump out of the way to avoid being hit by the truck, and the driver sped away in the truck.

The victim called 911 and reported that he believed Defendant had stolen his truck. The victim told the responding officer that he was "99 percent" certain that Defendant was the person who had stolen his truck. Defendant lived approximately two tenths of a mile or four minutes away from the victim. The victim explained that although he had seen Defendant "thousands of times" prior to April 13, Defendant had always been wearing a cap or some other type of head covering, and the person who took the victim's truck was not wearing a head covering. While the victim was sitting on his porch a day "or so" after the theft, Defendant walked by and looked over his shoulder at the victim. The victim testified that upon seeing Defendant's face, the victim became "100 percent" certain that Defendant was the person who had stolen the truck, and the victim walked to the police department and reported his certainty to an officer. The victim testified that he also suspected Defendant of committing the prior thefts.

The victim learned that officers recovered his truck and went to the police department to identify it. He stated that his truck was white with blue trim but that someone had painted the hood black after it was stolen. While removing his Bible from his truck, the victim saw other items inside the truck that did not belong to him, including a motorcycle helmet and a chain saw. The victim did not know to whom the items belonged, and he did not remove the items from his truck while at the police department.

A few days later, the officers returned the victim's truck and his tools that had been in the truck when it was taken. The victim stated that the truck had belonged to his father and had sentimental value. His estimated value of the truck was between $3,100 and $3,200, and his estimated value of the tools that were in the truck was between $2,500 and $3,000. The victim took the truck to an automobile repair shop where he learned that the estimated cost to return the truck to its condition prior to the theft was $3,100 to $3,500.

At the conclusion of the State's proof, the trial court granted Defendant's motion for judgment of acquittal on the vandalism charge and dismissed the charge. The court denied Defendant's motion as to the theft charge.

Defendant presented the testimony of Monty Miller, who was then a detective with the LaFollette Police Department in April 2019. Mr. Miller did not respond to the crime scene, but he conducted an investigation and prepared the case file. He later interviewed the victim when the victim came to the police department requesting an update regarding his case. Mr. Miller believed he went to the victim's home "a couple times."

Sometime after the theft, Mr. Miller saw the truck, which he described as "very unique," on the roadway and effectuated a traffic stop. He identified the driver as John Marlow and the passenger as Rebecca Ford. Mr. Miller discovered that the tags on the truck were registered to a different vehicle. He took Mr. Marlow into custody and interviewed him. Mr. Marlow stated that he purchased the truck from "somebody across the tracks" and that he believed the seller's name was "Tony." Mr. Miller noted that Defendant's residence was located on the other side of railroad tracks. Mr. Miller explained that he did not show Mr. Marlow a photograph of Defendant because Mr. Marlow would not "fully come out at the time and tell me it was [Defendant]. He kept saying Tony, because he was trying to protect him." Mr. Miller did not believe he charged Mr. Marlow with theft and explained that in many cases, stolen property "will change hands two or three times" and that the ultimate purchaser may be unaware that the property had been stolen.

Mr. Miller did not recall whether a chain saw, a motorcycle helmet, or any other items were in the truck when he recovered it. He believed he prepared an inventory of the items found in the truck, but when asked about the absence of an inventory from the case file, he acknowledged that he may not have prepared one. He stated that any items recovered from the truck would have been returned to the owner.

Mr. Miller testified that he was later terminated from the LaFollette Police Department but denied that the termination was "for cause." He challenged the adequacy of the investigation that resulted in his termination and stated that he had retained counsel. He denied planting evidence against a coworker or falsely accusing a fellow officer of committing a criminal offense.

Sue Foust, Defendant's mother, testified that Defendant lived with her at her home located approximately two blocks from the victim's home. She stated that Defendant was at her home during the entire night on which the theft occurred. She recalled that Defendant

spent the whole night repairing tools and tinkering with "junk" and that he was so loud that he woke her up numerous times throughout the night.

At the conclusion of the proof, the jury convicted Defendant of theft of property valued at $2,500 or more. Following a sentencing hearing, the trial court sentenced Defendant to twelve years of incarceration to be served as a career offender at 60 percent service. Defendant filed a motion for new trial and an amended motion, and following a hearing, the trial court entered an order on May 10, 2024, denying Defendant's motion. This appeal follows.

## II. Analysis

On appeal, Defendant contends that (1) the State failed to disclose evidence in violation of *Brady v. Maryland*; (2) the State failed to preserve evidence in violation of *State v. Ferguson* and that the trial court, therefore, erred in failing to grant Defendant's motion to dismiss; and (3) the trial court erred in limiting Defendant's closing argument.

### A. Failure to Disclose Evidence

Defendant asserts that the State withheld evidence of allegations of misconduct by Monty Miller while employed with the LaFollette Police Department in violation of *Brady v. Maryland*. Defendant maintains that the evidence was material for purposes of impeachment, that the State did not avoid its *Brady* obligations by declining to present Mr. Miller as a witness as trial, and that the trial court erroneously concluded that Mr. Miller's role in the investigation was minimal. The State responds that Defendant has failed to establish that the State suppressed evidence that it was obligated to disclose or that the evidence was exculpatory and material.

Prior to trial, Defendant filed a "Motion to Compel Discovery," seeking "any documents" that could be used to impeach Mr. Miller. Defendant stated in his motion that in August 2022, the LaFollette City Council voted to terminate Mr. Miller following an investigation into allegations that Mr. Miller failed to timely disclose information that another officer "fixed" a ticket for a person with whom that officer was romantically involved, that Mr. Miller "intended" to have two other officers fired to enable Mr. Miller to become the police captain, and that Mr. Miller encouraged a confidential informant to falsely accuse another officer of committing a criminal offense. Defendant attached to his motion the minutes from the City Council meeting, the report of the investigation into the allegations against Mr. Miller, and the written complaint filed by an officer against Mr. Miller that led to the investigation.

Defendant subsequently filed a "Motion to Dismiss, to Find the State in Contempt, or to Provide a Jury Instruction" due to "the State's ongoing refusal to produce material evidence previously requested as discovery pursuant to [Tennessee Rule of Criminal Procedure] 16 and pursuant to *Brady v. Maryland*[.]" Defendant attached to his motion an email from the prosecutor that said the State did not intend to call Mr. Miller as a witness at trial and, therefore, the State was not obligated to provide any material related to him.

The State filed a response to Defendant's motion, arguing that based on the allegations in Defendant's motion, he appeared to be in possession of the material that he requested and that the information was not necessary for purposes of impeachment because the State did not intend to call Mr. Miller as a witness at trial. The State also argued that Defendant failed to make the showing required to obtain a police officer's personnel files as set forth in *State v. Butts*, 640 S.W.2d 37 (Tenn. Crim. App. 1982).

During a pretrial hearing on Defendant's motions, the trial court noted that Defendant appeared to be aware of the information related to Mr. Miller based on the pleadings filed by Defendant. Defense counsel responded, "We're aware of what we've provided, yes, but we would like—we would like to know what else there is, and we think that the State has an obligation to tell us that," and defense counsel argued that accusations of tampering with witnesses and manufacturing evidence by an officer is "absolutely exculpatory . . . for our client." The State responded that the State never planned to call Mr. Miller as a witness even prior to his termination because he could not identify Defendant as the person who took the victim's truck.

The trial court found that Defendant failed to make a "sufficient showing" that the "attacks on Mr. Miller's credibility [are] exculpatory" to Defendant. The court noted that the only information provided about Mr. Miller's involvement in Defendant's case was that he located the stolen vehicle, which at that time was being driven by Mr. Marlow. The court stated that Defendant could question Mr. Miller at trial regarding the allegations that led to his termination and told defense counsel that "I think that you know a lot about it based on the motions you filed." Accordingly, the court denied Defendant's motion to compel.

In *Brady v. Maryland*, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Tennessee Supreme Court has held that to establish a *Brady* violation, a defendant must show that (1) he requested the information (unless the evidence is obviously exculpatory, in which case the State is obligated to release the information regardless of whether it was requested); (2) the State

suppressed the information; (3) the information was favorable to the defendant; and (4) the information was material. *State v. Edgin*, 902 S.W.2d 387, 390 (Tenn. 1995).

At trial, the defendant bears the burden of proving a *Brady* violation by a preponderance of the evidence. *Id.* Appellate courts "review the lower court's 'findings of fact, such as whether the defendant requested the information or whether the state withheld the information . . . de novo with a presumption that the findings are correct unless the evidence preponderates otherwise.'" *State v. Thomas*, 687 S.W.3d 223, 253 (Tenn. 2024) (quoting *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004)). "[C]onclusions of law, however, such as whether the information was favorable or material, are reviewed under a purely de novo standard with no presumption of correctness." *Id.* (quoting *Cauthern*, 145 S.W.3d at 599).

Evidence "favorable to the accused" includes both "evidence deemed to be exculpatory in nature and evidence that could be used to impeach the state's witnesses." *Johnson v. State*, 38 S.W.3d 52, 55-56 (Tenn. 2001). Put another way, favorable evidence "provides some significant aid to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of the events, or challenges the credibility of a key prosecution witness." *Id.* at 56-57 (citation omitted).

One of the core requirements of *Brady* is that the information supposedly withheld must have been material. *See United States v. Bagley*, 473 U.S. 667, 682 (1985); *Edgin*, 902 S.W.2d at 389. The Supreme Court has expounded the definition of "material" evidence as follows:

> [The] touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Materiality requires a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435; *see also Johnson*, 38 S.W.3d at 58.

Although not specified in Defendant's brief, the information that he sought in the trial court included Mr. Miller's personnel file. "'[A] defendant's right to discover

exculpatory evidence does not include the unsupervised authority to search through the [State's] files.'" *State v. Stanhope*, 476 S.W.3d 382, 396 (Tenn. Crim. App. 2013) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987)). Furthermore, "'[d]efense counsel has no constitutional right to conduct his own search of the State's files to argue relevance.'" *Id.* (quoting *Ritchie*, 480 U.S. at 59). This court has adopted the following rule regarding a defendant's right to access police personnel records:

> Criminal defendants may not routinely have access to police personnel records, but upon a strong showing that the personnel records might contain information material to a defendant's case, the trial court should conduct an *in camera* inspection of the records and release to [the] defendant those items the court deems material to the defense.

*State v. Butts*, 640 S.W.2d 37, 39 (Tenn. Crim. App. 1982); *see Stanhope*, 476 S.W.3d at 396-97.

However, Defendant did not request an *in camera* inspection of Mr. Miller's personnel file by the trial court. Defendant also did not request that the personnel file be placed under seal and preserved for appellate review to allow this court to determine whether the file contained material items. Therefore, Defendant has waived his claim with respect to Mr. Miller's personnel file. *See State v. Dowdy*, No. W2000-01011-CCA-R3-CD, 2001 WL 91732, at *8 (Tenn. Crim. App. Jan. 26, 2001) (holding that the defendant waived his challenge to the trial court's decision against allowing his access to an officer's personnel file by failing to request an *in camera* inspection by the trial court and by failing to request that the file be placed under seal and preserved for appellate review); *see also Stanhope*, 476 S.W.3d at 397 (concluding that the defendant waived review on appeal of the trial court's denial of his request for access to an officer's personnel file when the defendant failed to request that the file be placed under seal and preserved for appellate review).

Moreover, we conclude that Defendant failed to otherwise establish a *Brady* violation. Defendant acknowledged in his pleadings that he was in possession of the written complaint that led to an investigation of Mr. Miller, the report of the investigation, and the minutes from the City Council meeting during which they voted to terminate Mr. Miller's employment. Under *Brady*, the prosecution is not under a duty to disclose information that the defendant either possesses or is able to obtain. *Johnson*, 38 S.W.3d at 56; *State v. Caldwell*, 656 S.W.2d 894, 896 (Tenn. Crim. App. 1983) (declining to find a *Brady* violation in failing to turn over police records where the defendant was aware of the content of the witness's testimony).

Defendant questioned Mr. Miller at trial regarding the allegations that led to his termination from the police department. Furthermore, the State did not rely on any evidence obtained during Mr. Miller's investigation in its case in chief. Mr. Miller did not respond to the scene on the night of the offense, and the State relied on the victim's testimony and his identification of Defendant as the perpetrator in seeking a conviction. Although Mr. Miller recovered the stolen truck, Mr. Marlow, and not Defendant, was driving the truck, and the defense elicited testimony from Mr. Miller that Mr. Marlow claimed to have purchased the truck from "Tony." Given the information that Defendant possessed regarding the allegations of misconduct against Mr. Miller, the defense's questioning of Mr. Miller at trial regarding the allegations, the State's reliance on the victim's testimony, and Mr. Miller's limited role in the investigation, we conclude that any additional information regarding alleged misconduct by Mr. Miller does not undermine the confidence in the verdict and, therefore, is not material. Accordingly, Defendant has failed to establish a *Brady* violation.

## B. Failure to Preserve Evidence

Defendant asserts that the State failed to preserve items recovered from the victim's stolen vehicle that did not belong to the victim in violation of *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999). Defendant argues that "[t]hese items could have proven key to establishing what happened to the truck after it had been stolen, where it had gone, and who had ridden in it" and that the State's failure to preserve the items "deprived the defense of the ability to review and investigate these items." The State responds that Defendant failed to establish that the evidence existed or that the State was required to preserve the evidence. The State further responds that the trial conducted without the evidence was fundamentally fair.

At trial, the victim testified that when he went to the police station to identify his truck after officers recovered it, he saw items inside the truck that did not belong to him, including a motorcycle helmet and a chain saw. He stated, "There was another item or two, but I can't remember the smaller items." The victim did not know to whom the items belonged or what happened to the items. Mr. Miller later testified that he did not recall whether a chain saw and a motorcycle helmet were inside the truck when he recovered it. He stated that any such items would likely have been returned to the owner. He believed that an inventory of the items found were inside the truck was created but stated that if the inventory was not included in the police file, "maybe there wasn't an inventory run on it."

At the conclusion of the proof, Defendant made an oral motion to dismiss, arguing that the State's failure to preserve the items that were found in the truck and that did not belong to the victim violated his right to a fair trial as set forth in *Ferguson*. Defendant stated that he did not learn of the existence of these items until the trial. He maintained

that the items, such as the motorcycle helmet, were exculpatory in that they could have belonged to the person who had stolen the truck and that had the State preserved the items and disclosed the existence of the items to the defense, he could have argued at trial that "if the helmet doesn't fit, you must acquit." The State responded that although the victim testified to seeing the items inside the truck, none of the officers "knew anything about them." The State also responded that the items were not necessarily exculpatory because the items could have been taken in other thefts committed on the night of the offense. The trial court found that Defendant failed to establish that the evidence was material or that the absence of the evidence deprived him of a fair trial. Thus, the court denied Defendant's motion.

In *State v. Ferguson*, the Tennessee Supreme Court "explained that the loss or destruction of potentially exculpatory evidence may violate a defendant's right to a fair trial." *State v. Merriman*, 410 S.W.3d 779, 784 (Tenn. 2013) (citing *Ferguson*, 2 S.W.3d at 915-16). Our supreme court observed that "the due process required under the Tennessee Constitution was broader than the due process required under the United States Constitution" and rejected the "bad faith" analysis espoused by the United States Supreme Court, in favor of "a balancing approach in which bad faith is but one of the factors to be considered in determining whether the lost or destroyed evidence will deprive a defendant of a fundamentally fair trial." *Id.* at 784-85. "[F]undamental fairness, as an element of due process, requires a review of the entire record to evaluate the effect of the State's failure to preserve evidence." *Id*. (citing *Ferguson*, 2 S.W.3d at 914, 917).

Under this "balancing approach," the trial court must first "determine whether the State had a duty to preserve the evidence." *Id*. at 785. The State's duty to preserve is "limited to constitutionally material evidence." *Id*. To be "constitutionally material," the evidence "must potentially possess exculpatory value and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. (citing *Ferguson*, 2 S.W.3d at 915, 918). "If the trial court determines that the State had a duty to preserve the evidence, the court must determine if the State failed in its duty." *Id*. (citing *Ferguson*, 2 S.W.3d at 917). If the trial court concludes that the State lost or destroyed evidence that it had a duty to preserve, the trial court must then consider three factors to determine the appropriate remedy for the State's failure:

(1) the degree of negligence involved;

(2) the significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and

(3) the sufficiency of the other evidence used at trial to support the conviction.

*Id.* (quoting *Ferguson*, 2 S.W.3d at 917). "If the trial court concludes that a trial would be fundamentally unfair without the missing evidence, the trial court may then impose an appropriate remedy to protect the defendant's right to a fair trial, including, but not limited to, dismissing the charges or providing a jury instruction." *Id.* at 785-86.

We review the trial court's decision concerning the fundamental fairness of a trial conducted without the missing evidence under a de novo standard of review. *See id*. at 791 ("Because the application of *Ferguson* . . . presents a constitutional issue, we will apply a de novo standard of review to the trial court's decision concerning the fundamental fairness of the trial."). The trial court's choice of remedy, however, will not be overturned on appeal absent a showing that the trial court abused its discretion. *Id*. at 792 ("Thus, when the chosen remedy is consistent with the findings made by the trial court utilizing the *Ferguson* considerations, we will not overrule that choice on appeal.").

Although the victim testified to seeing a motorcycle helmet, a chain saw, and "another item or two" that did not belong to him inside the truck, no evidence was presented at trial establishing what the "another item or two" were. "The burden is on Defendant to show that evidence alleged to have been lost or destroyed by the State actually existed." *State v. Jones*, No. M2022-01620-CCA-R3-CD, 2024 WL 1252218, at *6 (Tenn. Crim. App. Mar. 25, 2024) (citing *State v. Martin*, No. W2017-01610-CCA-R3-CD, 2018 WL 4677575, at *16 (Tenn. Crim. App. Sept. 28, 2018)), *no perm. app. filed*. "*Ferguson* simply does not apply to evidence that never existed," and "'this court has repeatedly refused to grant *Ferguson* relief when there was no proof that the alleged evidence existed.'" *Id.* (quoting *State v. Sparks*, No. M2005-02436-CCA-R3-CD, 2006 WL 2242236, at *5 (Tenn. Crim. App. Aug. 4, 2006)); *see State v. Morton*, No. E2019-01755-CCA-R3-CD, 2022 WL 2301439, at *33 (Tenn. Crim. App. June 27, 2002), *perm. app. denied* (Tenn. Nov. 16, 2022).

Defendant also failed to establish that the State had a duty to preserve the motorcycle helmet and chain saw. At trial, Defendant argued that the helmet was potentially exculpatory because Defendant could have tried on the helmet and argued "if the helmet doesn't fit, you must acquit." On appeal, Defendant cites to the "favorable evidence" standard in *Brady* and maintains that the motorcycle and chain saw could have led to further investigation. Defendant's arguments are based on the premise that the helmet and chain saw belonged to the person who stole the truck. However, the evidence presented at trial—including Defendant's own witness—established that multiple people had spent time inside the truck after it was stolen. When officer recovered the truck, Mr. Marlow was driving, and a woman was sitting in the passenger's seat. Mr. Marlow claimed that he purchased

the truck from "Tony." Thus, the helmet and chain saw did not necessarily belong to the person who stole the truck, and evidence that the helmet did not fit Defendant's head would not have excluded him as the perpetrator. Accordingly, the items did not have potential exculpatory value.

Even if the State had a duty to preserve the evidence, the evidence would not have played a significant role in the defense in light of evidence that multiple people had been inside the truck after it had been taken, any of whom could have left the helmet and chain saw behind. Furthermore, strong evidence of Defendant's guilt was presented at trial, including the victim's identification of Defendant as the perpetrator on the night of the offense and a few days after the offense occurred and Mr. Marlow's statement that he purchased the truck from "Tony." The loss or destruction of the evidence did not deprive Defendant of his right to a fundamentally fair trial, and the trial court, therefore, properly denied Defendant's motion to dismiss.

## C. Limitation of Closing Argument

Defendant maintains that the trial court erred in preventing him from arguing during closing argument that the victim hated Defendant. The State responds that the trial court did not abuse its discretion in preventing Defendant from arguing a fact that was not in evidence.

Closing arguments, which have "special importance in the adversarial process," are intended to sharpen and clarify issues by allowing parties to present their theory of the case and highlight strengths and weaknesses in the evidence. *State v. Banks*, 271 S.W.3d 90, 130 (Tenn. 2008). Closing argument is a valuable privilege which should not be unduly restricted. *State v. Bane*, 57 S.W.3d 411, 425 (Tenn. 2001), *abrogated on other grounds by State v. Thomas*, 687 S.W.3d 223 (Tenn. 2024); *Russell v. State*, 532 S.W.2d 268, 271 (Tenn. 1976). However, "[a]rgument must be temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law." *State v. Middlebrooks*, 995 S.W.2d 550, 557 (Tenn. 1999). The trial court is entrusted with wide discretion in controlling the course of closing arguments, and its decision will only be reversed upon an abuse of discretion. *Bane*, 57 S.W.3d at 425. Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010).

During closing arguments, defense counsel argued without objection that "of course, [the victim] identified his neighbor who he hates, who he knows exactly what he looks like. The bias here is incredible." Defense counsel challenged the adequacy of the

police investigation and maintained that Defendant had an alibi for the night of the offense. Defense counsel also challenged the adequacy of the victim's identification of Defendant as the perpetrator and argued, "You also should consider [the victim's] bias. There is no question that [the victim] hated [Defendant]." The State objected, arguing that the victim never stated that he hated Defendant. Defense counsel responded, "I think he testified on direct that he disliked him. Well, that was my recollection." The trial court stated, "I didn't hear that." Defense counsel stated, "I will move on to more specific things." He argued to the jury that "maybe we didn't hear that he testified that he hates [Defendant]" but that the victim testified that he believed Defendant had stolen from his previously and that the victim's identification of Defendant was based on this belief rather than on the victim's observations.

Although the victim did not testify that he "hated" Defendant, he asserts that defense counsel properly argued such an inference based on the evidence. Defense counsel, however, was permitted to argue that the victim's identification of Defendant was based on the victim's bias due to his unsubstantiated belief that Defendant had previously stolen items from him and was not based on the victim's actual observations of the perpetrator. Thus, defense counsel argued that the victim's identification of Defendant as the perpetrator was not reliable due to the victim's prior negative feelings toward Defendant. Even if the trial court erred by not allowing defense counsel to argue that the victim "hated" Defendant, any such error is harmless. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."); *State v. Gentry*, 538 S.W.3d 413, 430 (Tenn. 2017) (applying Rule 36(b) in concluding that that the defendant failed to establish "prejudice" resulting from the trial court's limiting closing argument regarding adverse possession).

## III. Conclusion

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____ /s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE
