IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 11, 2026 Session

## STATE OF TENNESSEE v. JOHN COLLIN KILPATRICK

**Appeal from the Circuit Court for Lewis County**
**No. 2023-CR-23     Michael E. Spitzer, Judge**
_____

### No. M2024-01649-CCA-R3-CD

The Defendant, John Collin Kilpatrick, was convicted by a Lewis County Circuit Court jury of possession of drug paraphernalia and two counts of possession of a firearm by a convicted felon and was sentenced by the trial court to an effective term of eight years at 85% release eligibility. On appeal, the Defendant contends that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding exculpatory information of addresses on file with the Tennessee Board of Probation and Parole ("Board" or "Board of Probation and Parole"); that the trial court erred by refusing to conduct an in camera review of the Board's records that were in the possession of the State, by denying the Defendant's request for a special jury instruction on possession, and by denying the Defendant's motion for a mistrial based on the State's discovery violations; and that the cumulative effect of the errors deprived the Defendant of a fair trial. Based on our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and TOM GREENHOLTZ, JJ., joined.

David Christensen, Columbia, Tennessee, for the appellant, John Collin Kilpatrick.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; and Hans Schwendimann, District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

This case arises out of the September 1, 2022 discovery by Lewis County Sheriff's Department ("LCSD") officers of shotguns, methamphetamine and drug paraphernalia

inside a mobile home located at 151 Longbranch Road in Hohenwald. The sheriff's department officers, accompanied by Tennessee Department of Correction ("TDOC") Probation and Parole Officer Fredericka Gildersleeve and her partner, were there to participate in a home visit and to serve an arrest warrant on William Atkinson, a probationer under Officer Gildersleeve's supervision.

When the officers arrived, the Defendant was sitting on the front porch of the home and Mr. Atkinson was fleeing into the woods. Officer Gildersleeve recognized the Defendant, who was a parolee under her supervision and on her list for a home visit later that day at 109 Yates Road in Hohenwald. When she asked the Defendant what he was doing at the home, the Defendant told her that he had signed a lease on the home and had been living there for about a week and that Mr. Atkinson had moved out three weeks earlier but came back to pack up some belongings. After receiving permission from her supervisor to conduct her home visit of the Defendant at the Longbranch Road address, Officer Gildersleeve and the other officers followed the Defendant inside, where the Defendant sat in a living room recliner.

Officers found a loaded sawed-off shotgun beside the front door, an unloaded shotgun underneath a living room bench, two plastic bags of methamphetamine in a bedroom, a set of scales underneath a mattress in that bedroom, and assorted drug paraphernalia at different locations throughout the home. The Defendant was arrested and subsequently charged by the Lewis County Grand Jury in a five-count indictment with possession of methamphetamine with the intent to sell or deliver, two counts of possession of a firearm by a convicted felon, possession of a firearm during the commission of a dangerous felony, and possession of drug paraphernalia.

The State presented four witnesses at the Defendant's February 22-23, 2024 jury trial: TDOC Officer Gildersleeve; LCSD Deputy Chrisitan Pelkey, who participated in the search; LCSD Investigator Brad Lawson, who participated in the search and interviewed the Defendant; and Tennessee Bureau of Investigation Special Agent Forensic Scientist Isabella Sanders, the chemist who analyzed the drugs found in the home. The State also introduced Deputy Pelkey and Investigator Lawson's body camera video recordings, which corroborated witness testimony that the Defendant told the officers that he had lived at the home for about a week, that Mr. Atkinson had moved out approximately three weeks earlier but came back that day to get some of his belongings, and that he was aware of the firearms in the home but that they did not belong to him. The Defendant elected not to testify and did not present any witnesses in his defense. At the conclusion of the trial, the jury convicted the Defendant of two counts of possession of a firearm by a convicted felon and possession of drug paraphernalia as charged in the indictment. The jury acquitted the Defendant of the remaining counts of the indictment.

## ANALYSIS

### I. *Brady* Violation

As his first issue, the Defendant contends that the State committed a *Brady* violation by willfully failing to comply with the trial court's orders to produce the Board of Probation and Parole's records of the addresses it had on file for the Defendant and Mr. Atkinson on September 1, 2022. The Defendant argues that the State's failure to provide documentation that his address on file on September 1 was not 151 Longbranch Road, and that Mr. Atkinson's address on file was 151 Longbranch Road, constituted a *Brady* violation because the information was within the control of the State and was material to his defense. The State argues that the State did not violate *Brady* because the Defendant had the information he requested, and, further, that the Defendant cannot show that the information was material. We agree with the State.

To establish a *Brady* violation, a defendant must show that: (1) he or she requested the information (unless the evidence is obviously exculpatory, in which case the State is obligated to release such evidence regardless of whether or not it was requested); (2) the State suppressed the information; (3) the information was favorable to the defendant; and (4) the information was material. *State v. Jackson*, 444 S.W.3d 554, 594 (Tenn. 2014) (citing *Johnson v. State*, 38 S.W.3d 52, 56 (Tenn. 2001)). Also, the defendant must show that the material that was allegedly withheld was not already in his possession or could not have been obtained by other means. *Anderson v. State,* 726 S.W.3d 170, 181 (Tenn. Crim. App. 2025); *State v. Marshall*, 845 S.W.2d 228, 233 (Tenn. Crim. App.1992); *State v. Caldwell,* 656 S.W.2d 894, 897 (Tenn. Crim. App.1983); *Banks v. State,* 556 S.W.2d 88, 90 (Tenn. Crim. App.1977); *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). Evidence is favorable if it "provides some significant aid to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of the events, or challenges the credibility of a key prosecution witness." *Johnson*, 38 S.W.3d at 56-57 (citation and internal quotation marks omitted). Generally, "[e]vidence is deemed to be material when there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 58 (citation and internal quotation marks omitted). "All of the *Brady* requirements must be met in order to show a *Brady* violation." *Watson v. State*, No. W2019-00489-CCA-R3-PC, 2020 WL 7786957, at *13 (Tenn. Crim. App. Dec. 30, 2020), *perm. app. denied* (Tenn. Mar. 23, 2021).

Whether a defendant is entitled to a new trial based upon a *Brady* violation "presents a mixed question of law and fact." *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004).

The lower court's findings of fact, such as whether the defendant requested the information or whether the state withheld the information, are reviewed on appeal de novo with a presumption that the findings are correct unless the evidence preponderates otherwise. The lower court's conclusions of law, however, such as whether the information was favorable or material, are reviewed under a purely de novo standard with no presumption of correctness.

*Id.*

This issue must be viewed in the context of what occurred at a pretrial hearing on the Defendant's motion for a reduction in bond, at pretrial hearings on the Defendant's discovery motions, at a jury-out conference toward the end of the trial, and at the hearing on the Defendant's motion for new trial.

### Bond Reduction Hearing

Officer Gildersleeve, called as a witness by the Defendant at the October 13, 2023 bond reduction hearing, testified that she had been the Defendant's parole officer from the Defendant's release from prison until the Defendant's arrest in the instant case. She stated that she performed a home visit of the Defendant at his aunt's home in Hohenwald, which was the Defendant's initial address upon his release on parole. She could not recall the address. On August 10, 2022, she performed a home visit of the Defendant at 109 Yates Road in Hohenwald. No drugs or guns were found during the August 10 visit at 109 Yates Road. However, drug paraphernalia and drug residue were found during that visit, and the Defendant was charged with possession of drug paraphernalia as a result.

Officer Gildersleeve testified that her purpose in going to 151 Longbranch Road on September 1, 2022, was to conduct a home visit of Mr. Atkinson, who was another one of the offenders she supervised. She said that 151 Longbranch Road was Mr. Atkinson's registered address with her at that time, and that the Defendant's registered address with her at that time was 109 Yates Road. In fact, she had the Defendant on her list for a home visit later that day at 109 Yates Road. She was, therefore, surprised to see the Defendant at 151 Longbranch Road. She stated that she asked the Defendant what he was doing there, and the Defendant replied that he had moved to the residence and been living there for about a week. When she asked why the Defendant had not informed her of his change of address, the Defendant responded that he had just signed the lease and moved in a week ago.

Officer Gildersleeve testified that she asked the Defendant if they could "go ahead and do his home visit" and he agreed.[1] The Defendant opened the front door and led the way inside, followed by Officer Gildersleeve, Officer Gildersleeve's partner, Deputy Pelkey, and Investigator Lawson. Upon entering the home, the Defendant sat in a recliner on the left, and the officers looked to their right and immediately saw the loaded shotgun beside the door. The Defendant acknowledged that he was aware of the existence of both shotguns that were found in the home. The Defendant also acknowledged that he knew that the shotgun beside the door was loaded. The Defendant denied ownership of the guns.

Officer Gildersleeve testified that the methamphetamine was found in the first bedroom, which was the bedroom that Mr. Atkinson used when she conducted home visits of Mr. Atkinson at the home. She said she had no idea which bedroom the Defendant claimed but that the Defendant told her that the first bedroom was not his bedroom.[2] Officer Gildersleeve recalled that a woman may have been inside when she and the other officers entered the home. However, to her understanding, the Defendant was the only individual living in the home on September 1, 2022.

On cross-examination, Officer Gildersleeve testified that the Defendant's mother came to 151 Longbranch Road during the September 1, 2022 search and informed Officer Gildersleeve that the Defendant had moved into the home a week earlier.

The Defendant's mother, Dianne Carroll, testified that she lived at 157 Longbranch Road, and that 151 Longbranch Road was "right up the hill" behind her. She said she talked to Officer Gildersleeve during the September 1, 2022 search of 151 Longbranch Road but denied having told her that the Defendant was living at 151 Longbranch Road. She could not remember her entire conversation with Officer Gildersleeve but recalled having suggested where the officers could find Mr. Atkinson and giving Officer Gildersleeve a note to that effect.

On cross-examination, Ms. Carroll testified that on September 1, 2022, the Defendant lived on "Yates Road with a girl." Ms. Carroll acknowledged that she had felony drug convictions and a felony conviction for writing a worthless check, and that she had been charged with shoplifting. On redirect examination, she testified that, at the time the Defendant was being questioned, he had just used drugs and was vomiting and, in her opinion, "was out of his mind."

---

[1] At trial, Officer Gildersleeve testified that she first sought and received permission from her supervisor to conduct the Defendant's home visit at the Longbranch Road address.

[2] Investigator Lawson testified at trial that the Defendant identified the middle bedroom, not the first bedroom, as his bedroom.

LCSD Investigator Brad Lawson testified that the Defendant acknowledged on September 1, 2022, that he had been living at 151 Longbranch Road for approximately a week, that he was aware of the two firearms in the home, and that he knew he was not supposed to be in possession of firearms. Investigator Lawson stated that during his transport to the jail, the Defendant told Investigator Lawson a story about the previous tenant, Mr. Atkinson, having "bought bunk dope (indiscernible) that was rock salt."

## Pretrial Hearings on Defendant's Discovery Motions

At a December 5, 2023 pretrial hearing, the prosecutor expressed his opinion that the information the Defendant requested about the address the Board of Probation and Parole had on file for the Defendant on September 1, 2022, "was satisfied during the bond hearing" by Officer Gildersleeve's testimony. The prosecutor also informed the trial court that he had "tendered everything [he had] at [the] moment" and would immediately turn over any further documents he received.

Defense counsel responded that his understanding was that there was in the State's possession "documentation" from the Board of Probation and Parole that the Defendant was not living at 151 Longbranch Road on September 1, and it was that documentation that he was seeking. The trial court asked Officer Gildersleeve whether she had documents that indicated the Defendant's address, and Officer Gildersleeve replied: "I have been directed by my supervisor that (indiscernible due to location across the courtroom)." The trial court then stated that it would enter an order directing Officer Gildersleeve to tender that information to defense counsel and to the prosecutor.

At a February 13, 2024 pretrial hearing, defense counsel informed the trial court that the only form he had received from the Board was "a form that says [the Defendant's] last known address was 109 Yates Road." Defense counsel said that there was no information about the Defendant's address at the time he was placed on parole, how the Defendant's address was updated, or a list of the Defendant's updated addresses. Defense counsel argued that "there ha[d] to be a more specific form for that from the [B]oard of [P]robation and [P]arole about a parolee's on-file address."

The prosecutor informed the trial court that Officer Gildersleeve had provided an initial response, which was unsatisfactory to defense counsel. The prosecutor stated that he then reached out to Officer Gildersleeve and her supervisor and "they sent an additional four or five pages of records that they could locate which do[] have an address of 109 Yates Road in Hohenwald as pertaining to [the Defendant]." The prosecutor said that the additional pages with the reference to 109 Yates Road consisted of Officer Gildersleeve's report dated August 22, 2022, approximately nine days before the incident in the instant case. The prosecutor stated that Officer Gildersleeve and her supervisor did not "know

what else they c[ould] provide in this case" and pointed out that there was body camera video from the date of the incident in which the Defendant could be heard informing the officers that he had been living at the Longbranch Road home for about a week.

Defense counsel asserted that there should be an intake form with the date that the Defendant moved into the Yates Road address, arguing that the Board could not state that 109 Yates Road was the Defendant's "last known address" without having "something to establish" their prior knowledge of 109 Yates Road as the Defendant's address.

The trial court stated that, to be clear, it would issue a new order to reflect that defense counsel was "entitled to the intake form that indicates the address of [the Defendant] and any subsequent form that shows a change of address." The prosecutor responded that he had specifically asked the Board for that information, and it was unable "to produce this mythical document." The trial court inquired of an unidentified probation officer present in the courtroom if the Board had an intake form with the Defendant's address. The probation officer replied that there was a questionnaire but not an intake form. The trial court then stated that its order would reflect that defense counsel was entitled to the intake form or the questionnaire, if it indicated an address.

Defense counsel's second discovery request was for the same information with respect to Mr. Atkinson. The prosecutor pointed out that the Defendant's discovery motion requested all the Board's records relating to Mr. Atkinson's residence on file, the history of the Board's home visits of Mr. Atkinson at the Longbranch Road address, and the details of previous searches at the residence during the period of Mr. Atkinson's occupancy. The trial court replied that it would order production of only "any intake or questionnaire form that lists [the Longbranch Road home] as his address[.]"

Based on the trial court's ruling with respect to the record of Mr. Atkinson's address, the prosecutor requested a continuance to allow him time to have Mr. Atkinson, incarcerated in a prison in West Tennessee, brought in as a witness. The trial court denied the request. The prosecutor argued that admitting a document that showed the Longbranch Road home as Mr. Atkinson's address at the time of the incident would "point the finger at someone [that the prosecutor did not] have the opportunity to get here." The trial court noted that the prosecutor already knew that Mr. Atkinson's registered address on September 1, 2022, was 151 Longbranch Road and that the information would be elicited by defense counsel on cross-examination. The prosecutor protested that such information, introduced in an exhibit, would be "a game changer[,]" because "now the jury, Judge, is going to have an exhibit, potentially, that shows somebody else's address on there as of September 1st and I'm going to need that person to testify that they were not living there." The trial court again denied the request for a continuance, stating, "Well, you just need to bring them in. Denied."

**Jury-Out Trial Conference on Discovery Issues**

The technical record contains the trial court's February 21, 2024 order granting in part and denying in part the Tennessee Board of Probation and Parole's February 21, 2024 Motion to Quash the Defendant's Subpoena Duces Tecum for Officer Gildersleeve to bring her computer with her to trial. In the order, the trial court references a hearing held that day. The transcript of that hearing is not included in the record on appeal. However, in the order, the trial court rejected the Board's argument that the information sought through the computer could have been provided in discovery, noting that Officer Gildersleeve testified at the hearing that the documents "simply did not exist and could only be found in the [E] T[OMIS] network." The trial court, therefore, ordered that Officer Gildersleeve, if called as a trial witness, was "required to bring her work computer" but that "the only matter to which [she] shall be required to testify to, based on her computer information, is the current address listed on her computer for [the Defendant] and a third party, who is not on trial."

In the jury-out conference that followed the Defendant's motion for a mistrial based on the State's discovery violations, the trial court expressed its displeasure in Officer Gildersleeve's not having printed out and produced the page from the Defendant's E TOMIS records that showed the Defendant's address on file, stating:

> [S]he indicated to me today because I asked her, do you mean to tell me, because I had that in my order when I . . . I mentioned it to the AG[']s office, do you mean to tell me that your probation and parole officers in the field cannot push a single button and print a document, because one of the arguments . . . from [Officer Gildersleeve], was I don't have a document that shows the address. In fact, she did have a document in it that showed an address if she just pressed print. And that's all she had to do, and it was my understanding until today that's she couldn't print it for some reason off the [E] TOMIS system. She [] can print a page. She should have done it on day one. And AG's office shouldn't have to get involved in it.

The prosecutor stated that it was his understanding that printing from E TOMIS was "essentially just a screen shot" from the computer and not "any kind of official document." The trial court responded that that was all that defense counsel "wanted from day one . . . [something t]hat he could trace back to an official document so that when she got on the stand, he could cross examine her about it." The trial court noted, however, that defense counsel did not ask Officer Gildersleeve for the information when she was on the witness stand. The trial court concluded, therefore, that "it didn't really matter and the issue was worked out."

## Hearing on Defendant's Motion for New Trial

At the hearing on the Defendant's motion for a new trial, Officer Gildersleeve testified that she forwarded to her district director the trial court's order that the Defendant's address on file be turned over to the defense, the subpoenas she received, and "everything that [she] had in [her] file" on the Defendant. Her district director, in turn, forwarded the information to the TDOC attorneys for their approval as to which documents she could submit. Officer Gildersleeve stated that she printed off "[w]hat they told [her] to submit" and filed it with the court. She later forwarded the same documents to the prosecutor. When asked if the ten to twelve pages that defense counsel received was everything that was in her file, she replied that she thought her file contained more than twelve pages. She did not recall having submitted any documentation with respect to Mr. Atkinson and testified that she had only recently received a subpoena for Mr. Atkinson's information.

When questioned why the only information about the Defendant's address in the documents turned over to the defense was the August 22, 2022, report of the Defendant's technical violation, she replied:

> Oh, you - - okay. So the Yates Road, that would have been - -okay. So in this file, that address wouldn't be in the file because, at that point, I submitted - - when he gave me the change of address to the Yates Road, I put that information in our system which is E TOMIS. So it wouldn't be any documentation in his file with that Yates address. Now, as far as his 150 - - 151 Long[b]ranch, that date - - that contact note should have been in the file for September 1st when we did the - - when we did the home visit. So in that contact note, it would have said that we changed his - - he changed his address on that date. But as far as that address being on file in his case file, it wouldn't be there because that's not the contact information he gave when he first was on parole, when he was paroled in - -

Officer Gildersleeve explained that there was no record of an offender's current address in an offender's physical file:

> A.    It is in E TOMIS. It's not in his physical file. So when an offender comes to me and reports to me, when they report their change of address either in person or on the phone, the only thing that I do - - I go into our system, which would be TOMIS, E TOMIS, I put in there the change of address, the code and then I change it in our system to that address. As far as a paper trail being created, it's no paper trail for that.

- 9 -

Q.      Right, but it's in E TOMIS.

A.      Yes, it would have been in - - the contact note would be in there.  Now, as far as when it is changed in our system, there's not a track record to show when addresses are changed, the dates on it.  You just go in.  You put the address in on that date that he tells me that he changed his address.

Officer Gildersleeve testified that there was "not even a history of the [Defendant's] addresses" in E TOMIS, but just her contact note stating that the Defendant reported a new address on a certain date, along with the date that she entered the contact note.  When she stated that she could print out from E TOMIS the contact note she entered when the Defendant changed his address to 109 Yates, defense counsel responded: "Okay.  And Judge, that's what we requested and that's what the Court ordered.  And I personally never received that."

During Officer Gildersleeve's cross-examination testimony, the prosecutor introduced two collective exhibits: the additional discovery documents the prosecutor forwarded to defense counsel on February 5, 2024, and the Defendant and Mr. Atkinson's respective questionnaires, which the prosecutor attached to a February 16, 2024 email to defense counsel.  Officer Gildersleeve testified that the Defendant reported in his questionnaire that his address in October 2024 was 110 Ford Street in Hohenwald.[3]  She agreed that, at some point, she entered a new address for the Defendant in the E TOMIS system, in effect erasing or overriding the previous Ford Street address.  She further agreed that E TOMIS did not keep a record of an offender's address on a specific date and that she could not, therefore, have pulled up the Defendant's address as of a specific date or time.  Nor could she simply "push a button" to generate and print everything in an offender's E TOMIS file.  She could, however, "go in and print individual stuff[.]"  She testified that E TOMIS was a "faulty" system that was "difficult and frustrating" to use, and that there were times when it would not "even save all contact notes."

Officer Gildersleeve testified that the Defendant's address on file on September 1, 2022, "that [they] knew of [,]" was 109 Yates Road and agreed that she testified to that fact at both the bond hearing and at trial.  She stated that, in addition to the subpoenas for documents, she received a subpoena for her computer.  She said she had her laptop with her at trial, and that defense counsel never asked her to look up anything in E TOMIS.  She agreed, however, that there was nothing she "could have done . . . to generate a document showing [the Defendant's] address on file as of September 1st, 2022."

---

[3] Officer Gildersleeve either misspoke or misread the Defendant's handwriting.  The actual date on the questionnaire is October 2021.

- 10 -

On redirect and recross examination, Officer Gildersleeve testified that, although she could not produce a document showing the Defendant's address on September 1, 2022, she could have printed from E TOMIS and produced "the contact note of [the Defendant] calling [her] or in person changing his address to the 109 Yates [Road.]" She said that the contact notes she entered into E TOMIS were not in "the address portion of E TOMIS" and were not official documents that were placed in an offender's physical file, and that she did not print out contact notes unless needed.

Upon questioning by the trial court, Officer Gildersleeve testified that the contact note she entered after the Defendant's September 1, 2022, arrest "basically explain[ed] . . . the events that happened [that day]" and that the Defendant "provided a new address [to her] on that date of 151 Long Branch [sic] Road."

On September 5, 2024, the trial court entered an order denying the Defendant's motion for new trial/judgment of acquittal. In addressing the Defendant's claim of a *Brady* violation, the trial court noted, among other things: the Defendant's unequivocal statement to Officer Gildersleeve on September 1, 2022, that he had moved into the Longbranch Road home; Officer Gildersleeve's testimony that the Defendant's last known address with her was Yates Road, that she had no record of the Defendant's changes in address in her physical file but could access her contact notes in E TOMIS in which she recorded the Defendant's reported changes of address, and that she could not produce any document that provided the Defendant's address on a specified date, other than the Defendant's address on the date of his arrest; and defense counsel's failure to ask Officer Gildersleeve to access her E TOMIS contact notes from her computer during his cross-examination at trial.

As the trial court noted, Officer Gildersleeve testified at both the bond hearing and at trial that the Defendant's address on file with her on September 1, 2022, was 109 Yates Road. The defense, therefore, had knowledge from the time of the bond hearing that the Defendant's address on file with the Board on September 1, 2022, was the Yates Road residence. As for documentary evidence of the Defendant's address with the Board, we note that Officer Gildersleeve's August 22, 2022 parole violation report with the Defendant's "Last Known Address" listed at the bottom as 109 Yates Road, which was provided to the defense on February 5, 2024, includes the following sentence: "On or about 08/10/2022, Probation/Parole Officers along with local law enforcement conducted a home compliance check at the parolee's reported address on file." Thus, in addition to Officer Gildersleeve's testimony that the Defendant's address on file with her was 109 Yates Road, the defense had documentation that the Defendant's address on file with the Board as of August 22, 2022, was the Yates Road address.

As for documentation of the Defendant's address on file with the Board on the specific date of the incident, Officer Gildersleeve explained at the hearing on the motion for new trial that neither the Defendant's physical file nor his electronic file in E TOMIS contained a record of the Defendant's address as of a specific date and time, and that she could not, therefore, provide documentation of the Defendant's address on file as of September 1, 2022. She could, however, print out and provide the contact note she entered at the time the Defendant reported his move to the Yates Road address. However, she had her laptop with her at trial, and defense counsel never asked her to access that information. Based on the record, the Defendant cannot show that he did not already possess the evidence he sought or that the State withheld the evidence from him.

Moreover, the Defendant cannot show that the information was material. To be material, "the nondisclosure of evidence must be so serious that it creates a reasonable probability that the suppressed evidence would have produced a different verdict." *State v. Thomas*, 687 S.W.3d 223, 254 (Tenn. 2024) (citations and internal quotation marks omitted). "[T]he omission must be evaluated in the context of the entire record." *State v. Edgin*, 902 S.W.2d 387, 389 (Tenn. 1995) (citation and internal quotation marks omitted).

In support of his contention that the evidence was material, the Defendant cites the prosecutor's characterization of any potential exhibit showing Mr. Atkinson's address on file with the Board on September 1, 2022, as 151 Longbranch Road as "a game changer," arguing that the prosecutor "himself stated that the addresses would be proof to the jury that [the Defendant] lived at 109 Yates Road and not 151 Longbranch Road."

In our view, the prosecutor's choice of the term "game changer" was hyperbole used to support his motion for a continuance. However, regardless of the opinions of respective counsel, the exclusion of an exhibit or exhibits showing that the Defendant's address on file with the Board on September 1, 2022, was 109 Yates Road, and that Mr. Atkinson's address on file with the Board on that same date was 151 Longbranch Road, was not so serious as to create a reasonable probability that the evidence introduced at trial would have produced a different verdict. *See Thomas*, 687 S.W.3d at 254. On this point, we note that, according to Officer Gildersleeve's testimony at the motion for new trial, she entered a contact note into E TOMIS following the Defendant's arrest that showed he reported his change of address to 151 Longbranch Road that day. The officer's testimony suggests that any documentation the Board could have produced showing the Defendant's address on the date of the incident would have reflected 151 Longbranch Road rather than 109 Yates Road.

Regardless of which address the Board had on file for the Defendant on that day, the jurors heard Officer Gildersleeve's testimony that she expected to find the Defendant at 109 Yates Road on September 1, 2022. The jurors also saw the body camera footage in

which the Defendant informed the officers that he had moved to 151 Longbranch Road about a week earlier. This information had been known by the defense since the bond hearing and was exploited by the defense at trial. The defense also had access to the body camera footage. Furthermore, the jury returned a verdict that was indicative that they accepted the argument of the defense that the drugs found in the home were Mr. Atkinson's and not the Defendant's. We, therefore, conclude that the Defendant has not established a *Brady* violation.

## II. In Camera Review of Board's Records

The Defendant next contends that the trial court erred in denying his motion for an in camera review of the Board's records. The State argues that the trial court did not abuse its discretion in denying the motion because the Defendant has failed to show that such a review would have provided him with exculpatory information. We agree with the State.

On February 20, 2024, two days before trial, the Defendant filed a motion for in camera inspection of the Board's records based on the State's failure to "satisfy the orders of the Court" that the State provide the Defendant's and Mr. Atkinson's addresses on file with the Board at the time of the Defendant's arrest. The Defendant asserted that there was "clearly a discovery dispute regarding the court-order[ed] Board of Probation and Parole Records," and requested that the trial court conduct "an in camera review of the parole files for both [the Defendant] and Mr. Attkisson (sic) to determine if there is evidence the State breached its duties under either Rule 16 or Brady." The trial court denied the motion in an order entered *nunc pro tunc* on February 20, 2024, which states: "After consideration of the defense's request, the Court directed defense counsel to subpoena the computer of the probation and parole officer for review & use at trial[.]"

In *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), the United States Supreme Court upheld the Pennsylvania Supreme Court's remand order in a case in which the trial court, without having examined the entire file, refused to order disclosure of a protective service agency's confidential investigative file pertaining to allegations of child abuse. *Id*. at 58. The *Ritchie* Court concluded that the defendant was "entitled to have the CYS file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial." *Id*. The Court noted, however, that the defendant could "not require the trial court to search through the CYS file without first establishing a basis for his claim that it contains material evidence." *Id.,* at n.15 (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) ("He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense.")).

We conclude that the trial court acted within its discretion in denying the motion. The Defendant argues that, because the State failed to provide the Board's addresses on file of the Defendant and Mr. Atkinson, the trial court should have granted his motion "to determine what the District Attorney would not disclose." However, as the State points out, the Defendant failed to show how an in camera review of the Board's records would have provided him with any exculpatory evidence that he did not already possess.

### III. Special Jury Instruction on Possession

The Defendant next contends that the trial court erred in denying his request for a special jury instruction on possession. The State argues that the Defendant has waived consideration of this issue by his failure to provide any argument or citations to the record. We agree with the State. The argument section of the Defendant's brief contains nothing other than a citation to an unpublished case and an assertion that the trial court erred in denying his requested special jury instruction. A defendant who fails to make an argument on an issue or appropriate citations to the record waives the issue on appellate review. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b). We, therefore, conclude that the Defendant has waived this issue on appeal.

### IV. Motion for Mistrial

The Defendant next contends that the trial court erred in denying his "motion for a mistrial due to prosecutorial misconduct for repeated discovery violations." During Investigator Lawson's direct examination, the prosecutor attempted to admit an incriminating "chirp" or jail text message sent by the Defendant on September 1, 2022, which was not provided to the defense until the Saturday before trial. In an offer of proof, Investigator Lawson testified that he read the text when it was first sent but did not think anything about it until it recently came back up during trial preparation.

The trial court had initially ruled the text message admissible but changed its ruling after the offer of proof when it became clear that the prosecutor had access to the "chirp" or "CPC" system that recorded jail text messages and that it was the prosecutor who had brought the text message to Investigator Lawson's attention. Defense counsel moved for a mistrial, arguing that the case was "a total mess" due to the "multiple discovery violations that have been documented on the record." In support, defense counsel cited the prosecutor's having led the trial court to believe that the chirp evidence came from Investigator Lawson, as well as the State's failure to provide the address information he sought in repeated discovery motions. The trial court responded: "[Defense counsel], I asked you earlier if you wanted to continue the case based on [R]ule 16 issues that you were raising, and you said, no." Later, the trial court cautioned defense counsel to "be

- 14 -

cautious about derogatory comments towards what potentially would be unlawful acts that the State[']s committed."

The next day, the trial court issued the following ruling:

> I wanted to note on the record that yesterday we concluded with a very dramatic presentation by [defense counsel] concerning that this was a mistrial case and in light of that, I reviewed all the evidence that came in and note for the record that I don't think there was a single objection to evidence that was not granted to [defense counsel] and I cannot find any prejudice in the case at this point or anything that was v[io]lative of the rules, Rule 16 or otherwise, and the evidence that has come in appears to be fair and just based on knowledge of both parties.

The Defendant asserts that the above ruling effectively denied him the right to a fair trial.

The decision to grant a mistrial lies within the sound discretion of the trial court, and this court will not interfere with the exercise of that discretion absent clear abuse appearing on the face of the record. *See State v. Hall*, 976 S.W.2d 121, 147 (Tenn. 1998) (citing *State v. Adkins*, 786 S.W.2d 642, 644 (Tenn. 1990)). The burden of establishing the necessity for mistrial lies with the party seeking it. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). "Generally a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such action by the trial judge." *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991) (quoting *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977)). A manifest necessity exists when there is "no feasible alternative to halting the proceedings." *State v. Knight*, 616 S.W.2d 593, 596 (Tenn. 1981).

We conclude that the trial court acted within its discretion in declining to declare a mistrial. The trial court ruled the jail text message inadmissible, and there is nothing in the record to show that anything occurred to necessitate a mistrial or to prevent the Defendant from receiving a fair trial.

## V. Cumulative Error

Lastly, the Defendant contends that the cumulative effect of the numerous errors prevented him from receiving a fair trial. "The cumulative error doctrine is a judicial recognition that there may be multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's

right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76-77 (Tenn. 2010) (citations omitted). The cumulative error doctrine only applies when there has been more than one error committed during the trial proceedings. *Id*. at 77. We conclude that the Defendant is not entitled to relief under the doctrine of cumulative error.

## CONCLUSION

Based on our review, we affirm the judgments of the trial court.


s/ JOHN W. CAMPBELL
JOHN W. CAMPBELL, SR., JUDGE